[Civ. No. 2186. Fifth Dist. May 20, 1974.]

RUTH E. PETTERSON et al., Petitioners, v.
THE SUPERIOR COURT OF MERCED COUNTY, Respondent;
OTTO ZENTNER et al., Real Parties in Interest.

**COUNSEL**

Kane, Canelo & Walker, Gerald L. Walker and Ronald W. Hansen for Petitioner.

No appearance for Respondent.

Evelle J. Younger, Attorney General, G. A. Strader, Deputy Attorney General, Russell M. Koch, County Counsel, Carl O. Waggoner, Deputy County Counsel, Roy Lower, Linneman, Burgess, Telles & Van Atta and C. E. Van Atta for Real Parties in Interest.

**OPINION**

**GARGANO, J.**—Petitioners are respondents in a will contest now pending in the Superior Court of Merced County, and they seek to prevent real parties, the contestants in that action, from taking the deposition of David Black, a renowned handwriting expert. Petitioners' motion to restrain real parties from taking Black's deposition was denied by the superior court, and petitioners have applied for a writ of prohibition and/or mandate to command the lower court "to make an order that the deposition of David A. Black shall not be taken."

The Discovery Act (Code Civ. Proc., pt. 4, tit. 3, ch. 3, art. 3) of this state confers upon litigants the right to take depositions without prior court order or approval (Code Civ. Proc., § 2016, subd. (a); *Snyder* v. *Superior Court,* 9 Cal.App.3d 579, 585 [89 Cal.Rptr. 534]; *Dow Chemical Co.* v. *Superior Court,* 2 Cal.App.3d 1, 5 [82 Cal.Rptr. 288].) What petitioners are contending is that in denying their motion the lower court abused its discretion; the relief they are seeking is a writ of mandate compelling the court to set aside its order of denial and to grant petitioners' motion. Prohibition deals with judicial acts in excess of the court's jurisdiction and restrains or prevents the action; mandamus compels action. (*Citizens Utilities Co.* v. *Superior Court,* 59 Cal.2d 805, 813 [31 Cal.Rptr. 316, 382 P.2d 356]; *People* ex rel. *Younger* v. *County of El Dorado,* 5 Cal.3d 480, 490-491 [96 Cal.Rptr. 553, 487 P.2d 1193]; 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 15, pp. 3790-3791.) We shall treat petitioners' application as a petition for a writ of mandate.

The chronology, as gleaned from the declarations and other documents filed in the court below and testimony taken in that court, is this:

On January 24, 1969, Doretta C. Salau executed a formal will disposing of all of her property upon her death; the Methodist Church of Los Banos and the Los Banos Unified School District were the principal beneficiaries in the will. Miss Salau died on April 27, 1972. Thereafter, attorney Roy Lower petitioned the probate court to admit the formal will to probate and for letters testamentary; the hearing on the petition was set for June 5, 1972.

On June 2, 1972, Mr. Lower was informed of the existence of a holographic will allegedly written and signed by the decedent after she executed the formal will. Then, on June 5, 1972, Harold Becker appeared at the hearing on the petition for letters testamentary and announced that he needed a continuance to obtain an attorney to represent him in connection with the holographic will; the court granted a two weeks' continuance. A short time later Attorney Oliver Germino informed Lower that he had been retained by Becker and that Becker was decedent's nephew. He told Lower that he had engaged David Black to compare the handwriting and signature on the holographic will with handwriting exemplars of Doretta Salau.

On July 15, 1972, Germino telephoned Mr. Lower and informed him that David Black was of the opinion that the handwriting and signature on the holographic will were not the handwriting and signature of Doretta Salau. Ten days later, Germino met Lower in Los Banos and again stated that the handwriting expert was of the opinion that the holographic will was not written or signed by the decedent; he said that Harold Becker did not propose to offer the will for probate. In August, Lower received a letter from Mr. Becker apparently indicating that Becker did not intend to proceed with the probate of the holographic will. In November, Lower received a letter from Becker stating he had "washed [his] hands" of the holographic will.

In April 1973, Roy Lower was told that a petition for the probate of the will purporting to be the holographic will of Doretta Salau had been filed in the superior court by the law firm of Kane, Canelo and Walker on behalf of Ruth E. Petterson; he then contacted attorney Tom Kane and informed Kane of David Black's opinion. Lower testified that at that time Kane had no knowledge of Germino's prior involvement with the holographic will or that David Black had been consulted.

On April 13, 1973, the co-executors of Doretta Salau's formal will, the Methodist Church of Los Banos and the Los Banos Unified School District filed a contest to the alleged holographic will of the decedent; Ruth E. Pet-

terson, Harold Becker and other heirs of Doretta Salau were named as respondents. The following week the Attorney General joined the will contest as a contestant.

Gerald Walker of the law firm of Kane, Canelo and Walker received a letter from David Black dated December 5, 1973, informing Walker that Roy Lower was planning to take the expert's deposition in Los Angeles. The letter stated, "If you are not here to instruct me or if this subpoena is not quashed, I presume I will have to give the deposition."

On December 6, 1973, petitioners noticed a motion in the superior court of Merced County for an order prohibiting the taking of Black's deposition on the ground that the testimony sought from the handwriting expert was the work product of petitioners' attorneys and protected by the work product rule; the motion was accompanied by Mr. Walker's declaration that petitioners did not propose to call David Black as a witness in the will contest. The motion was denied, and this application for a writ followed.

In this state, a distinction is drawn between oral or written reports made by an expert to the attorney who retained him and the expert's own observations and conclusions. For obvious reasons, the expert's reports and communications to the attorney are treated as the attorney's work product and are protected by the work product privilege. (*San Diego Professional Assn.* v. *Superior Court,* 58 Cal.2d 194, 204 [23 Cal.Rptr. 384, 373 P.2d 448, 97 A.L.R.2d 761].) But an expert's own observations and conclusions based on those observations are not considered the attorney's work product because it is the expert's thought, research and effort, not the thought, research and effort of the attorney, which are sought by the adversary party. (*Dow Chemical Co.* v. *Superior Court, supra,* 2 Cal.App.3d 1, 9; *Grand Lake Drive In* v. *Superior Court,* 179 Cal.App.2d 122, 129 [3 Cal.Rptr. 621, 86 A.L.R.2d.129].) Nevertheless, with regard to pretrial disclosure, a distinction is drawn between an independent expert engaged by a party as part of his preparation for trial and the usual fact witness. The foundation of this distinction is fairness, and good cause is required to invoke the power of the court to require pretrial disclosure of the expert's observations and conclusions. "This rule avoids the permanency and inflexibility which would follow if the cloak of privilege were extended to cover the testimony of such experts." (*Grand Lake Drive In* v. *Superior Court, supra,* 179 Cal. App.2d 122, 129.)

Petitioners rely on *Swartzman* v. *Superior Court,* 231 Cal.App.2d 195 [41 Cal.Rptr. 721], to insist that a party to a lawsuit can never show good cause to take the deposition of the adversary's expert once it has been

demonstrated that the expert will not testify at the trial. In *Swartzman,* the court held that where an expert has been engaged solely to assist and advise counsel on trial preparation, his opinion is not a relevant factor in the case, and broad immunity must be given " '. . . to preserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but unfavorable aspects of such cases and . . . to prevent an attorney from taking undue advantage of his adversary's industry or efforts.' " (See also Code Civ. Proc., § 2016, subd. (g); *Hickman* v. *Taylor,* 329 U.S. 495, 516 [91 L.Ed. 451, 465, 67 S.Ct. 385]; *Sanders* v. *Superior Court,* 34 Cal.App.3d 270, 275-276 [109 Cal.Rptr. 770].)

The *Swartzman* opinion is reconcilable with the earlier decisions. When an expert is engaged by counsel to testify at the trial, essentially his role is similar to that of any other witness and, with some limitations, his observations and opinions are subject to pretrial discovery; good cause includes a showing that the expert may be called as a witness. On the other hand, if an expert is retained by an attorney only for the purpose of advising or assisting counsel to prepare his case, the expert's observations and opinions ordinarily are irrelevant, and the expert may not be deposed by the adversary party unless there is some other compelling reason for the taking of the deposition. It would be unthinkable to adopt a rule which, for example, would prohibit a litigant from taking the deposition of an expert who has examined or tested a relevant object even though the object is no longer available or the testing so altered the object tested that the adversary party cannot make like tests, merely because the party who retained the expert has elected not to call him as a witness. It is patent that such a rule would not be consonant with ordinary principles of fairness or the interests of justice. As the court observed in *Grand Lake Drive In,* an infinite variety of circumstances may arise in the course of human activity to justify inquiry into the acts and thoughts of an independent expert. (*Supra,* 179 Cal.App.2d 122, 131.)

We have concluded that the trial court did not abuse its discretion in this case. First, attorney Germino voluntarily informed Roy Lower that he had engaged David Black, the renowned handwriting expert, to compare the handwriting and signature on the holographic will with exemplars of the handwriting of the decedent, Doretta Salau. Then, Germino voluntarily disclosed to Mr. Lower that the handwriting expert was of the opinion that the handwriting on the holographic will was not the handwriting of the decedent and that his client did not propose to offer the will for probate. Later, Germino's communications were confirmed by the client himself. Even if we were to assume that the observations made or the opinions reached by David Black during the period that he was engaged

by Attorney Germino would have qualified as the work product of Germino, as to those observations and conclusions, the work product privilege was waived long before Mr. Black was engaged by Kane, Canelo and Walker. (Evid. Code, § 912, subd. (a); *Kerns Constr. Co.* v. *Superior Court,* 266 Cal.App.2d 405, 411 [72 Cal.Rptr. 74].) While the record shows that Mr. Germino died, and while arguably the work product privilege attaches to the client upon the attorney's death or resignation from the case, a holding to the effect that the privilege once waived by the attorney with the approval of the client is reinstated if the client retains another lawyer would be inconsistent with the waiver rule and would defeat its objects and purposes.[1]

Second, the record does not show that Harold Becker, now deceased, had any part in the initial filing of the petition for the probate of the holographic will; all the record shows is that Becker, a beneficiary in the will, was named as a respondent in the will contest which followed. The undisputed evidence presented in the court below proves that Mr. Tom Kane of the law firm of Kane, Canelo and Walker did not know that a handwriting expert had been retained by Mr. Germino and that the expert had expressed an opinion contrary to the position of the firm's client until he was so informed by attorney Lower. If we were to declare that petitioners now may prevent real parties from taking Black's deposition, we would be setting a precedent which eventually could lead to subtle but deliberate attempts to suppress relevant evidence. The rule predicated on fairness articulated in the decisions is a shield to prevent a litigant from taking undue advantage of his adversary's industry and effort, not a sword to be used to thwart justice or to defeat the salutory objects of the Discovery Act.

Third, the record shows that real parties are seeking to take Black's deposition to inquire, among other things, into his knowledge of the existence and whereabouts of all exemplars of Doretta Salau's handwriting the expert may have examined. This information is discoverable under any theory.

We hold that real parties may take the deposition of David Black as to

---

[1]David Black and attorney Walker have lodged affidavits with this court declaring that Harold Becker engaged David Black directly. The issue before us is whether the lower court abused its discretion and this information was not presented in that court. Even if we were to assume that the work product rule applies to a layman who is representing himself, the fact remains that Mr. Germino was retained by Becker; according to the evidence presented in the court below, Mr. Germino was attorney of record and was representing Becker when he informed Roy Lower that David Black was of the opinion that the holographic will was a forgery. In any event, the information sought by real parties is not the thought, research and effort of Becker.

any relevant observation he may have made and as to any pertinent conclusion he may have reached before he was engaged by the law firm of Kane, Canelo and Walker, and to inquire into Black's knowledge concerning the existence and whereabouts of any exemplars of the decedent's handwriting he may have examined. If real parties should attempt to seek information which qualifies as the work product of the law firm of Kane, Canelo and Walker, or which would contravene the rule predicated on fairness articulated by the cases, petitioners may seek an appropriate protective order in the lower court.

The petition is denied.

Brown (G. A.), P. J., and Franson, J., concurred.