[L.A. No. 30754. Aug. 14, 1978.]

GEORGE WILLIAMSON, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
SHELL OIL COMPANY et al., Real Parties in Interest.

**COUNSEL**

Belli & Choulos, Belli, Ashe & Choulos, Irmas, Simke, Chodos & Marshall, Irmas, Simke & Chodos, Roman M. Silberfeld and David Manning Chodos for Petitioner.

No appearance for Respondent.

Morgan, Wenzel & McNicholas, Dennis J. Sinclitico, George H. Ellis, Belcher, Henzie & Biegenzahn, Leo J. Biegenzahn and Uzzell S. Branson III for Real Parties in Interest.

## Opinion

**TOBRINER, J.**—In this petition for writ of mandate plaintiff seeks to discover a report prepared by an expert employed by counsel for one of the defendants in the underlying personal injury suit. Defendant had originally intended to call the expert as a witness at trial, and hence, under the relevant statute and case law, the expert's report would normally have been discoverable by plaintiff. In return for a codefendant's promise of indemnification, however, the defendant who employed the expert subsequently withdrew him as a witness. ■ This case therefore presents the question whether the withdrawal of the expert witness on the basis of such an indemnification agreement reestablishes the privilege against disclosure enjoyed by defendant or leaves the plaintiff free to discover the content of the report. Although the trial court denied plaintiff access to the report, we have concluded that under the circumstances of this case plaintiff is entitled to discover the contents of the report.

In September 1971, plaintiff George Williamson filed suit against defendants Shell Oil Company (Shell), Firestone Tire and Rubber Company (Firestone), and Big Four Automotive Equipment Corporation (Big Four), seeking damages for personal injuries which he sustained in Shell's employ while using a tire-changing machine manufactured by Big Four to install a Firestone tire. Plaintiff alleged defects in both the tire and the tire-changing machine.

During the course of discovery proceedings, Big Four employed O. Edward Kurt to investigate the accident and to submit a report. Following his investigation, Kurt submitted a report which stated that in his opinion the cause of the accident was Firestone's defective tire, and not any defect in the Big Four machine. After receiving this report, which, of course, was quite favorable to its case, Big Four designated Kurt as an expert witness to testify at trial. Plaintiff arranged to take Kurt's deposition and thereby to learn the results of Kurt's investigation.

Plaintiff, however, never learned the results of the investigation. On the eve of Kurt's scheduled deposition, and following a meeting with Firestone's counsel, Big Four withdrew Kurt's designation as expert witness. Plaintiff states without contradiction that at the meeting between defendants' counsel, Big Four discussed Kurt's findings with Firestone

and turned over copies of Kurt's report to Firestone.[1] After examining the report, Firestone's counsel, who naturally preferred the nondisclosure of Kurt's adverse findings, entered into an agreement with Big Four which provided that if Big Four withdrew Kurt as a witness, withheld his report from plaintiff's counsel, and refused to permit plaintiff's counsel to depose him, Firestone would indemnify Big Four against any liability Big Four might incur arising from plaintiff's injuries. In other words, Big Four agreed to silence its expert and withhold the information contained in his report from plaintiff in return for valuable consideration—indemnification—from Firestone.

Big Four thereafter complied with its promise to Firestone, withdrawing Kurt as a prospective witness and rebuffing plaintiff's attempt to depose Kurt or to obtain a copy of Kurt's report. Plaintiff sought an order of the trial court to compel Kurt's deposition and production of his report. Although the trial court authorized the deposition, it substantially limited the areas of plaintiff's inquiry, precluding plaintiff from discovering the results of Kurt's investigation and his analysis of the accident.

Plaintiff then filed a petition for writ of mandate in the Court of Appeal, seeking relief from the trial court's order. Although recognizing that extraordinary writs should not issue routinely in discovery cases, the Court of Appeal concluded that because the case presented ". . . questions of first impression that are of general importance to the trial courts and to the profession . . ." (*Oceanside Union School Dist.* v. *Superior Court* (1962) 58 Cal.2d 180, 185-186, fn. 4 [23 Cal.Rptr. 375, 373 P.2d 439]; see also *Pacific Tel. & Tel. Co.* v. *Superior Court* (1970) 2 Cal.3d 161, 169-171 [84 Cal.Rptr. 718, 465 P.2d 854]), an alternative writ should issue. After a hearing, the Court of Appeal ultimately determined that a peremptory writ of mandate should issue; we granted a hearing in order to resolve the novel issue of work product doctrine which this case presents.

Code of Civil Procedure section 2016, subdivision (b) provides in pertinent part, "The work product of an attorney shall not be discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing his claim or defense or will result in an injustice, and any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories shall not

[1]The inadequacy of the record prevents our consideration of the effect of any alleged disclosure between Big Four and plaintiff.

be discoverable under any circumstances." Accordingly, subdivision (b) affords a conditional or qualified protection for work product generally, and an absolute protection as to an attorney's impressions and conclusions. As subdivision (g) of the same section explains, "It is the policy of this state (i) to preserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of such cases and (ii) to prevent an attorney from taking undue advantage of his adversary's industry or efforts."

Section 2016 contains no definition of work product beyond extending protection to ". . . any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories . . . ." The cases indicate generally, however, that "material of a derivative character, such as diagrams prepared for trial, audit reports, appraisals, and *other expert opinions, developed as a result of the initiative of counsel in preparing for trial,*" are also to be protected as work product. (Italics added.) (*Mack* v. *Superior Court* (1968) 259 Cal.App.2d 7, 10 [66 Cal.Rptr. 280]; accord, *Southern Pacific Co.* v. *Superior Court* (1969) 3 Cal.App.3d 195, 198-199 [83 Cal.Rptr. 231].) In *San Diego Professional Assn.* v. *Superior Court* (1962) 58 Cal.2d 194, 204-205 [23 Cal.Rptr. 384, 373 P.2d 448, 97 A.L.R.2d 761], for example, we held that expert engineers' "evaluation and opinions" commissioned by an attorney for the purpose of preparing for trial was work product. "Whatever the extent of the concept of an attorney's work product may be, it is clear that . . . it is . . . the attorney's work, or that of his agents or employees, that is involved . . . ." (Italics omitted.) (*Wilson* v. *Superior Court* (1964) 226 Cal.App.2d 715, 724 [38 Cal.Rptr. 255] [hg. den., May 27, 1964].) ■ Thus as an expert opinion, developed as a result of the initiative of counsel in preparing for trial, Kurt's report clearly constitutes the work product of Big Four's counsel.

The issue before us, however, is whether Kurt's report, as work product of Big Four's counsel, should be protected against disclosure under section 2016. ■ While it may be appropriate to give broad immunity from discovery to an expert *consultant's* report developed at the initiative of counsel in preparation for trial, the courts agree that the initial status of the expert as consultant changes once the expert becomes a designated prospective witness. As the court stated in *Swartzman* v. *Superior Court* (1964) 231 Cal.App.2d 195, 203 [41 Cal.Rptr. 721], hg. den., Feb. 10, 1965, "[w]hen it becomes reasonably certain an expert will give his professional opinion as a witness on a material matter in dispute, then his opinion has

become a factor in the cause. At that point the expert has ceased to be merely a consultant and has become a counter in the litigation, one to be evaluated along with others. Such evaluation properly includes appropriate pretrial discovery." (See also *Mize* v. *Atchinson, T. & S. F. Ry. Co.* (1975) 46 Cal.App.3d 436, 449 [120 Cal.Rptr. 787]; *Bolles* v. *Superior Court* (1971) 15 Cal.App.3d 962, 963 [93 Cal.Rptr. 719]; *Dow Chemical Co.* v. *Superior Court* (1969) 2 Cal.App.3d 1, 10 [82 Cal.Rptr. 288]; *Scotsman Mfg. Co.* v. *Superior Court* (1966) 242 Cal.App.2d 527, 530-532 [51 Cal.Rptr. 511].) While good cause normally must be shown to compel discovery of expert opinions in advance of trial, good cause includes a showing that the expert may be called as a witness. (See *Sanders* v. *Superior Court* (1973) 34 Cal.App.3d 270, 279 [109 Cal.Rptr. 770].)

█ In the present case, the expert consultant did not long retain his initial status as advisor, for after learning the favorable nature of Kurt's report, Big Four designated Kurt as an expert witness to testify at trial. Indisputedly at this point plaintiff was entitled to discover Kurt's report; if Big Four had used Kurt's testimony at trial, the report would surely have remained discoverable. Before Kurt's scheduled deposition took place, however, Big Four withdrew Kurt's designation as a witness. Big Four argues that its withdrawal of Kurt as witness restored the immunity from discovery which Kurt's report originally enjoyed. As Big Four contends, an attorney acting in the best interest of his client must be free to make whatever use of an expert's opinion will be most likely to insure a good result for the client at trial; thus an attorney may properly decide not to call as a witness even an expert whose opinion is favorable to the client, if, in the attorney's judgment, the client's interests will otherwise be better served.

While a party may, indeed, enjoy the right to withdraw an expert witness at any time prior to disclosure of that witness' proposed testimony,[2] the record in the present case demonstrates that Big Four did

[2]Compare Evidence Code section 413: "In determining what inferences to draw from the evidence or facts in the case against a party, the trier of fact may consider, among other things, the party's failure to explain or to deny by his testimony such evidence or facts in the case against him, or his willful suppression of evidence relating thereto, if such be the case." As the court held in *Breland* v. *Traylor Engineering & Mfg. Co.* (1942) 52 Cal.App.2d 415, 426 [126 P.2d 455], "The rule of [present Evidence Code section 413] . . . is predicated on common sense, and public policy. The purpose of a trial is to arrive at the true facts. A trial is not a game where one counsel safely may sit back and refuse to produce evidence where in the nature of things his client is the only source from which that evidence may be secured. *A defendant is not under a duty to produce testimony adverse to himself, but if he fails to produce evidence that would naturally have been produced he*

not decide unilaterally to withdraw Kurt as a matter of trial tactics or personal litigation strategy. Big Four's decision stemmed rather from the agreement with Firestone: Firestone offered to pay Big Four to withdraw Kurt, in order to eliminate Kurt's potentially damaging testimony from the trial. Thus it was under Firestone's influence and in response to an offer of payment of indemnification that Big Four secured Kurt's withdrawal.

We do not accept defendants' argument that their action merely represents the sharing of information between two nonadversary codefendants, and therefore constitutes proper cooperation between parties sharing a common interest. The court in *Gorman Rupp Industries, Inc.* v. *Superior Court* (1971) 20 Cal.App.3d 28, 31 [97 Cal.Rptr. 377], explained that the fact that two parties are both defendants in no sense assures that they are not adversaries: "Each codefendant seeks to disclaim any responsibility for the alleged injuries, and argues that if there is responsibility for the alleged injuries it is due to the failure of the other. Certainly, there exists that relationship which suggests a conflict of interest. Petitioner [codefendant] has a vital interest in not relying solely on its lack of negligence or other avoidance of liability. Petitioner seeks to meet plaintiff's claim by showing the liability, if any, is that of another defendant. This clearly falls within the [rule] that an 'adverse' party includes one who may likely strive to win a point at issue at the expense of the other."

With respect to the issue toward which the Kurt report was directed—defects in Firestone's tire—the interests of Big Four and Firestone unquestionably conflicted. Big Four's interest lay in finding no negligence on its own part and in discovering a defect responsible for the accident in someone else's product—here, Firestone's. On the other hand, Firestone's interest lay in finding *no* defect in its product. Because Kurt was about to testify in favor of Big Four and against Firestone, only Firestone's offer of indemnification could have induced Big Four not to call its favorable witness.

Moreover, the agreement between Big Four and Firestone is not as benign as "normal cooperative action" between codefendants bound by a common interest. Agreements to suppress evidence have long been held void as against public policy, both in California and in most common law

---

*must take the risk that the trier of fact will infer, and properly so, that the evidence, had it been produced, would have been adverse."* (Italics added.)

jurisdictions.[3] (See *Valentine* v. *Stewart* (1860) 15 Cal. 387, 404, in which this court invalidated a contract to withdraw depositions taken in connection with litigation, as "affected with a fatal taint of illegality"; Rest., Contracts, § 554; 6A Corbin, Contracts, § 1430, at p. 380: "A bargain for the concealment or suppression of . . . evidence is of course illegal.") The agreement at issue in the present case is clearly of such a nature. In return for Firestone's promise to pay consideration, Big Four has agreed to suppress highly relevant evidence which, if revealed at trial, would be harmful to Firestone. Defendants do not nullify the agreement's insidious effect by attaching to it the seemingly innocuous label of "contract of indemnification."

The court in *Petterson* v. *Superior Court* (1974) 39 Cal.App.3d 267 [114 Cal.Rptr. 20], anticipating the potential for encouraging just such illegal bargains, declared unequivocally that discovery should be allowed in order to deter similar suppression of evidence. In *Petterson,* counsel for one claimant under a holographic will disclosed to the executor the opinion of a handwriting expert that the will was a forgery. Subsequently, when the executor's attorney sought to depose the expert, counsel for another claimant under the holographic will objected on the ground that he had hired the expert as a consultant, and did not propose to call him as a witness at trial.

The court rejected the assertion of work product privilege, and held that the privilege was waived with respect to the handwriting expert's opinion by virtue of the disclosure of the expert's observations and conclusions by the first heir's attorney to the executor's attorney.[4] In the course of its analysis, the court stated, "If we were to declare that petitioners now may prevent real parties from taking [the expert's]

---

[3]Compare Penal Code section 136, subdivision (a): "Every person who willfully and unlawfully prevents or dissuades any person who is or may become a witness, from attending upon any trial, proceeding, or inquiry, authorized by law, is guilty of a misdemeanor"; and section 136½: "Every person who gives or offers or promises to give to any witness or person about to be called as a witness, any bribe upon any understanding or agreement that such person shall not attend upon any trial or other judicial proceeding, or every person who attempts by means of any offer of a bribe to dissuade any such person from attending upon any trial or other judicial proceeding, is guilty of a felony." Although Firestone dealt exclusively with Big Four in attempting to silence Kurt, the effect of Firestone's agreement with Big Four is certainly analogous to an agreement directly with Kurt that Kurt "not attend upon . . . trial."

[4]In the present case we do not reach plaintiff's argument that Big Four waived any work product privilege through disclosure to Firestone.

deposition, we would be setting a precedent which eventually could lead to subtle but deliberate attempts to suppress relevant evidence. The rule predicated on fairness articulated in the decisions is a shield to prevent a litigant from taking undue advantage of his adversary's industry and effort, not a sword to be used to thwart justice or to defeat the salut[a]ry objects of the Discovery Act." (39 Cal.App.3d at p. 273.)

The *Petterson* court's reasoning is instructive: although the work product rules are designed explicitly to protect a party's expense and industry in seeking out expert testimony,[5] no policy underlying the work product doctrine justifies defendants' conduct in the present case. If we were to hold otherwise, nothing would preclude a party in a multi-party case from in effect auctioning off a witness' testimony to the highest bidder. Although the present record does not disclose whether Big Four offered to retain Kurt as a witness if plaintiff bid more for his testimony than Firestone, we point out that in the absence of compelled disclosure such competitive bidding would remain a grim possibility. One of the principal purposes of discovery is to " 'make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.' " (*Greyhound* v. *Superior Court* (1961) 56 Cal.2d 355, 376 [15 Cal.Rptr. 90, 364 P.2d 266].) We will not sanction the "gamesmanship" involved in the suppression of evidence by permitting Big Four to withhold an expert report which would have been discoverable but for the payment of consideration by one of the parties to this litigation.

The agreement between Firestone and Big Four clearly indicates the very real potential for "subtle but deliberate attempts to suppress relevant evidence." The inevitable effect of the trial court's order would be to condone defendants' concealment of evidence, in direct contravention of this court's insistence that neither party to such an agreement should receive the aid of a court in effectuating such an illegal scheme. (See *Tappan* v. *Albany Brewing Co.* (1889) 80 Cal. 570, 572 [22 P. 257].) This court cannot place its imprimatur upon planned stratagems of purchased suppression of evidence. Because Big Four's withdrawal of Kurt directly flows from the illegal agreement to repress evidence, surely under section 2016, subdivision (b) "denial of discovery . . . [would] result in an injustice." We therefore must order full disclosure of Kurt's report to

---

[5]Contrary to defendants' suggestion, our decision does not in any way prevent plaintiffs or defendants from arranging in advance jointly to engage and consult a single expert, to promote economy of litigation.

prevent Big Four and Firestone from reaping any untoward benefit from their attempted illegal agreement.

Let a peremptory writ of mandate issue as prayed.

Bird, C. J., Mosk, J., and Manuel, J., concurred.

**RICHARDSON, J.**—I respectfully dissent. As the majority opinion explains, it is well established that work product protection must be afforded to an experts' reports and communications to an attorney employing him in preparation for trial at least until the expert has been designated as an actual trial witness. (See *Mize* v. *Atchison, T. & S. F. Ry. Co.* (1975) 46 Cal.App.3d 436, 449 [120 Cal.Rptr. 787]; *Petterson* v. *Superior Court* (1974) 39 Cal.App.3d 267, 271-272 [114 Cal.Rptr. 20]; *Sanders* v. *Superior Court* (1973) 34 Cal.App.3d 270, 278-279 [109 Cal.Rptr. 770]; *Bolles* v. *Superior Court* (1971) 15 Cal.App.3d 962, 963 [93 Cal.Rptr. 719]; *Dow Chemical Co.* v. *Superior Court* (1969) 2 Cal.App.3d 1, 9-10 [82 Cal.Rptr. 288]; *Mack* v. *Superior Court* (1968) 259 Cal.App.2d 7, 10-11 [66 Cal.Rptr. 280]; *Scotsman Mfg. Co.* v. *Superior Court* (1966) 242 Cal.App.2d 527, 529-532 [51 Cal.Rptr. 511]; *Swartzman* v. *Superior Court* (1964) 231 Cal.App.2d 195, 202-203 [41 Cal.Rptr. 721].)

Under the foregoing rule, the Kurt report would have been protected from discovery by reason of Big Four's announcement, prior to Kurt's scheduled deposition, that Kurt would not be called to testify. The majority holds, however, that Big Four forfeited its work product protection because it agreed with Firestone to withdraw Kurt as a trial witness in return for Firestone's promise of indemnification. The majority questions the legality of an agreement whereby one party "sells" his silence to another regarding potentially relevant evidence.

It does appear to be the general rule that "A bargain that has for its object or consideration the suppression of evidence . . . is illegal." (Rest., Contracts, § 554; see 6A Corbin, Contracts, § 1430, at p. 380; see also *Tappan* v. *Albany Brewing Co.* (1889) 80 Cal. 570 [22 P. 257].) It is not as clear, however, that actual "suppression" of evidence is involved here. The work product rules, by very definition, in effect sanction a "suppression" of an expert's report unless and until the decision is made to call the expert as a trial witness. Furthermore, assuming that the alleged agreement between Big Four and Firestone was illegal and unenforceable *as between those parties,* and that appropriate sanction might have been

imposed, no compelling reason exists for our holding that the making of such an agreement resulted in a waiver by Big Four of its work product protection *vis-a-vis the plaintiff.* Certainly, no such waiver was intended by Big Four who, having engaged Kurt, should retain the right to decide *for itself* whether or not to call him as a witness. The record discloses that at the present time he will not be called. Accordingly, under the authorities cited above, the Kurt report remains *conditionally* protected from disclosure to plaintiff.

Under section 2016, subdivision (b), the Kurt report would be discoverable upon a showing of prejudice or injustice. Yet the trial court herein declined to enter such a finding of prejudice or injustice, possibly reflecting the fact that plaintiff had hired his own experts to investigate the accident. The underlying evidence, upon which Kurt's expert conclusions were reached, presumably is fully accessible to plaintiff's experts; at least it is not alleged that this evidence is not so available. If, in fact, Firestone's tire was defective and caused or contributed to the accident, no reason whatever appears in the record why plaintiff's experts cannot reach the same conclusion as a result of their independent efforts.

Subdivision (g) of section 2016 announces a policy of this state to prevent an attorney from taking undue advantage of his adversary's efforts, as well as to protect his adversary's privacy which, it must always be borne in mind, is for the overriding protection of the lawyer's client. "Under such a policy a party cannot substitute the wits of his adversary's expert for wits of his own in analyzing the case. [Citation.]" (*Swartzman* v. *Superior Court, supra,* 231 Cal.App.2d 195, 203.)

I would deny the writ.

Clark, J., concurred.

The petition of real parties in interest Firestone and Big Four for a rehearing was denied September 14, 1978. Clark, J., was of the opinion that the petition should be granted.