**TOM L. SCOTT, INC., et al., Relators,**

v.

**Hon. Grainger W. McILHANY, Judge, 31st Judicial District of Wheeler County, Texas, Respondent.**

No. 07-87-0264-CV.

Court of Appeals of Texas, Amarillo.

May 31, 1988.

Jack O'Neill, Elaine A. Lisko and John E. Nelson, III, Porter & Clements, Houston, for relators.

Jess H. Hall, Jr., R. Scott Hogarty, Bonnie J. White, and James R. Snell, Liddell, Sapp & Zivley, Houston, Bill W. Waters, Waters, Holt, Fields & Waters, Pampa, for respondent.

Harlow Sprouse and Mark L. Packard, Underwood, Wilson, Berry, Stein & Johnson, Amarillo, and Mark N. Buzzard, Buzzard Law Firm, Pampa, for Apache Corp.

Oscar Fields, Stokes & Fields, Amarillo, for Sooner Pipe & Supply Corp.

Charles R. Watson, Jr., Culton, Morgan, Britain & White, Amarillo, for Hydril.

Layton Z. Woodul, Sr., Crenshaw, Dupree & Milam, Lubbock, for Babcock & Wilcox.

Robert L. Templeton and John T. Smithee, Templeton & Garner, Amarillo, and M. Kent Sims, P.C., Wheeler, for Axelson, Inc.

Before REYNOLDS, C.J., and DODSON and COUNTISS, JJ.

DODSON, Justice.

In this original mandamus proceeding, Tom L. Scott, Inc., George S. Johnson, Sunshine Exploration Company, W.W. Braden, III, and Canyon Energy, Inc. ("the Scott group") ask this Court to direct the Honorable Grainger W. McIlhany, Judge of the 31st Judicial District Court of Wheeler County, to rescind his pretrial discovery orders limiting the Scott group's discovery. Specifically, the relators request this Court to issue a writ of mandamus directing the trial court to order the depositions of certain designated consulting experts. Denied.

The underlying suit from which discovery is sought arose from the 4 October 1981 blowout of the Key 1–11 gas well in Wheeler County, Texas. Apache Corporation ("Apache") was the operator of the well and a fifty percent working interest owner at the time of the blowout. El Paso Exploration Company, n/k/a Meridian Oil Production, Inc. ("El Paso") owned the remaining fifty percent working interest. As a result of the blowout, several mineral owners brought suit against Apache and El Paso, real parties in interest here. Apache and El Paso subsequently filed a third party action against Axelson, Inc. ("Axelson"), U.S. Industries, Inc. ("USI"), Hydril, Babcock and Wilcox, and Sooner Pipe and Supply Corporation ("Sooner") for damages in connection with the cost of controlling the well and for the loss of their own property interest.

Relators, the Scott group, intervened in the suit seeking damages for injury to their mineral interests in an adjoining section of land. By this mandamus proceeding, relators seek to obtain depositions from six experts: Cranston Flesher, Roy Williamson, T.B. O'Brien, E.R. West, Rex McLellan, and Don Burns.

In *Jampole v. Touchy*, 673 S.W.2d 569, 572–73 (Tex.1984), the Court determined that mandamus is a proper remedy to correct trial court action where there has been an abuse of discretion by not permitting discovery and there is no remedy by appeal "that is 'equally convenient, beneficial, and effective as mandamus.'" In that regard, the party resisting discovery has the burden of affirmatively pleading and establishing that discovery does not lie. *Peeples v. Hon. Fourth Supreme Judicial Dist.*, 701 S.W.2d 635, 637 (Tex.1985); *Giffin v. Smith*, 688 S.W.2d 112, 114 (Tex. 1985). In this stance, we will examine the Scott group's discovery request to determine if Apache and El Paso have met their burden.

The first three of these experts, Flesher, Williamson, and O'Brien, were originally designated testifying experts by the Arkla Corporation and the Key Group ("Arkla and Key"). The other three experts, West, McLellan, and Burns, were designated testifying experts by Sooner, Hydril, and Babcock and Wilcox. Arkla and Key were originally plaintiffs in the underlying suit who later settled with Apache and El Paso. Sooner, Hydril, and Babcock and Wilcox were originally third party defendants who also settled with Apache and El Paso.

Before the settlement agreements with Arkla and Key were reached, Apache noticed the depositions of the Arkla/Key witnesses. On the morning the depositions were scheduled, Apache and El Paso entered into settlement agreements with Arkla and Key. Later, Apache and El Paso entered into similar agreements with Sooner, Hydril, and Babcock and Wilcox. The Arkla and Key agreements contained the following paragraph assigning to Apache and El Paso its witnesses and work product:

4. *Assignment of Litigation or Investigation Information.* For good and valuable consideration, Claimant hereby assigns to Apache and El Paso all rights now existing or to exist in the future which it or its attorneys have to: work product of its attorneys; investigations; analyses; studies; the information, reports or opinions generated by any expert or expert witness, whether hired for consultation or for purposes of testifying at trial; communications with any expert or expert witness and the right to communicate with any expert or expert witness; employment of any expert or expert witness; and any rights similar to the foregoing concerning its prosecution of the above styled case or the facts giving rise to that case. Claimant agrees to allow the attorneys for Apache and the attorneys for El Paso reasonable access to inspect and copy any documents, now existing or to exist in the future, which in any manner relate to the foregoing, though nothing herein shall require Claimant to actively assist in the trial preparation of Apache and/or El Paso other than furnishing information like that referred to in this Paragraph....

The Sooner, Hydril, and Babcock and Wilcox agreements contained similar paragraphs assigning their work product and experts to Apache and El Paso.

After the witnesses were assigned to it by this agreement, Apache positively averred that these experts would be consulting-only experts and stated that their depositions would not be given. Arkla, Key, Sooner, Hydril, and Babcock and Wilcox also positively averred that these witnesses were consulting-only experts.

Under the Texas Rules of Civil Procedure,* when an expert is designated as a testifying expert, one may discover that expert's mental impressions and opinions. However, if the expert is designated as a consultant, the mental impressions and opinions of the expert are not discoverable. Tex.R.Civ.P. 166b(2)(e).

Axelson, a plaintiff in the underlying suit, and the Scott group made several attempts to depose these experts. The trial court denied all attempts. Relators now ask this Court to direct the trial court to order the depositions to be taken. We decline.

■ Relators cite three arguments in support of their request to depose these witnesses. The first argument is that Apache and El Paso do not offer proof to the trial court that the facts, opinions, and mental impressions of the experts in question are exempt from discovery.

Rule 166b(3)(c) provides that an expert's identity, mental impressions, and opinions will be protected if the following three elements are established: (1) the expert will be used solely for consultation and will not testify at trial; (2) the expert's work product will not form the basis, either in whole or in part, of the opinions of an expert who will be called as a witness; and (3) the expert has been retained in anticipation of litigation or preparation for trial. The supreme court in *Turbodyne Corp. v. Heard*, 720 S.W.2d 802, 804 (Tex.1986), made clear that proof of each one of these elements is necessary to successfully resist discovery.

In this case, Apache filed a motion for a protective order seeking to protect several experts' mental impressions and opinions from discovery. Attached to that document is an affidavit of Harlow Sprouse,

* All references to rules will be references to the Texas Rules of Civil Procedure unless otherwise designated.

attorney for Apache. In that affidavit, Sprouse swears that all experts which were assigned to Apache through the settlement agreements referenced earlier were hired in anticipation of litigation. He also states that they will not testify at trial and that their work product will not form the basis for any testifying experts' opinion. Also attached to the motion for protective order are the affidavits of Tom Morris and Carter Burdette, attorneys for Arkla and Key. In their affidavits, Morris and Burdette state that the experts, O'Brien, Flesher, and Williamson were employed in anticipation of litigation and will not testify at trial. In addition, they state that factual data and opinions developed by these experts will not be divulged to other experts and their work product will not be the basis of the testimony of experts who will be called as witnesses at trial. Charles Watson, Oscar Fields, and Layton Woodul, representing Hydril, Sooner, and Babcock and Wilcox, respectively, make identical averments in their affidavits with regard to the experts, Burns, McLellan, and West. Relators have produced no evidence to controvert these affidavits.

Since our review is limited to an abuse of discretion standard, *Jampole v. Touchy*, 673 S.W.2d at 572, without controverting evidence, we determine that the trial court did not err in finding sufficient proof of the consulting expert privilege.

■ Relators' second contention is that the settlement agreements contravene public policy. They claim the agreements were, in essence, a "purchase" of the experts and a tool for the concealment and suppression of evidence. Relators cite to the California case of *Williamson v. Superior Court of Los Angeles*, 21 Cal.3d 829, 148 Cal.Rptr. 39, 582 P.2d 126 (1978), in support of this proposition. We do not consider this case controlling in this instance.

In *Williamson*, one defendant agreed to indemnify a co-defendant against all claims by the plaintiff in return for the co-defendant's agreement to withdraw the co-defendant's expert witness who was prepared to give damaging testimony against the de-

fendant. The court concluded that the situation was a bargain for the concealment and suppression of evidence and ordered the expert's report disclosed.

The circumstances in *Williamson* are distinctly dissimilar from the facts before us. In this instance, in determining whether agreements are, in effect, bargains for the concealment and suppression of evidence, we must look to the documents themselves. In that regard, we find nothing in the assignment of litigation information clauses in question that establishes that the settlement agreements were conduits for the concealment or suppression of evidence in contravention of the State's public policy.

■ In Texas, a party is under no duty to produce evidence by an expert witness which may be adverse to his position. Otherwise, a party could never redesignate an expert witness that was or became adverse to the party's position. Acting in the best interest of his client, the attorney must be free to make whatever use of an expert's opinion that will be most likely to produce good results for his client. Thus, the attorney may properly decide not to call as a witness even an expert who is favorable to his client if, in the attorney's judgment, the client's interest will otherwise be better served. We conclude that the settlement agreements did not contravene public policy.

■■ In their third contention, relators claim the designation of the experts as testifying experts and the subsequent assignment of their information and opinions to Apache and El Paso waived any exemption from discovery. Relators' first argument under this contention involves the validity of Apache's and El Paso's averments that these experts would be used solely for consultation. Relators argue that it was not within the authority of Apache to change the designations of these experts. However, "[t]he decision of when to require a party to aver that the expert will not be a witness is properly left to the discretion of the trial judge...." *Werner v. Miller*, 579 S.W.2d 455, 456 (Tex.1979). Further, in *Jones and Laughlin Steel, Inc.*

*v. Schattman,* 667 S.W.2d 352, 356 (Tex. App.–Fort Worth 1984, original proceeding), the court held that the trial judge abused his discretion by ordering discovery of an expert's mental impressions and opinions after the expert had been designated a consulting expert.

In *Jones and Laughlin Steel, Inc. v. Schattman,* a deposition was being given by an expert who had not yet been designated a testifying or consulting expert. The expert declined to answer several questions with respect to his mental impressions and opinions. A motion to compel these answers was filed and granted. The relator in that case then filed a motion to reconsider and, during the hearing on that motion, the relator positively averred that the expert would be used solely for consultation. The trial court persisted in ordering the questions to be answered. The Fort Worth Court of Appeals determined that the trial court abused its discretion by ordering discovery of the expert's mental impressions and conclusions in that the relator's designation of the expert as a consultant protected the expert's mental impressions and opinions. *Id.* at 356.

It is clear from the numerous orders issued by Judge McIlhany in the case before us that he permitted Apache and El Paso to change the designation of these witnesses on the morning their depositions were scheduled. This action was clearly within Judge McIlhany's discretion. It is also clear from the settlement agreements that these witnesses had been assigned to Apache; therefore, it was within Apache's domain to aver that they would be used solely for consultation.

 Next, relators argue that since these experts were originally designated as testifying experts, by operation of Texas Rule of Civil Evidence 511, the consulting expert privilege has been waived. Relators argue that this original designation was a "consent to disclosure." The consent to disclosure referred to in Rule 511 occurs when a party either voluntarily discloses or fails to object to disclosure by another party of a matter which is privileged under the Texas Rules of Civil Evidence. The con-

sulting expert privilege involved here is one granted by Texas Rule of Civil Procedure 166b(3)(c) and may only be waived by the actual disclosure of the expert's mental impressions and opinions. In any event, the original designation of these experts as witnesses who would be called at trial does not waive the consulting expert privilege. In *Jones and Laughlin Steel, Inc. v. Schattman,* the court stated that the disclosure of an expert's identity and even the giving of a deposition with regard to facts known by the expert do not waive the consulting expert privilege. 667 S.W.2d at 355.

 By their third argument, relators assert that Apache and El Paso cannot succeed to the presettlement consultations of the settling parties with their experts. Relators primarily rely on the proposition that the transfer to an adverse party of a privileged matter waived the privilege. *See Gulf Oil Corp. v. Fuller* 695 S.W.2d 769, 774 (Tex.App.—El Paso 1985, original proceeding). While this proposition is correct, its application depends on the parties being adverse. In this case, the parties settling with Apache and El Paso signed settlement agreements and dismissed their causes of action in the trial court with prejudice to refiling. These dismissals return the parties to the positions they occupied before the court's jurisdiction was invoked, *i.e.,* non-adverse parties. *Crofts v. Court of Civil Appeals,* 362 S.W.2d 101, 104 (Tex.1962). The non-adverse nature of the parties at the time of the assignment of the experts disposes of relators' waiver argument.

In summary, we overrule the relators' contentions and deny the petition for writ of mandamus.