**James A. HARRIS, Plaintiff,**

v.

**GULF INSURANCE COMPANY, Defendant.**

**Michael J. Stone, Plaintiff–Intervenor,**

v.

**Gulf Insurance Company, Defendant.**

**No. C 01–4906 CW.**

United States District Court,
N.D. California.

Dec. 15, 2003.

Kirk A. Pasich, Howrey Simon Arnold & White, LLP, Los Angeles, CA, Donna M. Drake, Mindy G. Davis, Howrey Simon Arnold & White, LLP, Washington, DC, Michael L. Charlson, Heller Ehrman White & McAuliffe LLP, Menlo Park, CA, Celia M. Jackson, Heller Ehrman White & McAuliffe LLP, San Francisco, CA, for Plaintiff.

J.T. Wells Blaxter, Robert C. Gebhardt, Jeffer Mangels Butler & Marmaro LLP, Brian R. Blackman, Sheppard Mullin Richter & Hampton LLP, San Francisco, CA, for Plaintiff–Intervenor.

Peter J. Koenig, Tucker Ellis & West LLP, San Francisco, CA, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WILKEN, District Judge.

Plaintiffs James A. Harris and Michael J. Stone have filed a motion for partial summary judgment. Defendant Gulf Insurance Company opposes the motion and cross moves for summary judgment. The matter was heard on August 8, 2003. Having considered all of the papers filed by the parties and oral argument on the motion, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion for partial summary judgment and DENIES Defendant's motion for summary judgment.

### BACKGROUND

Plaintiffs Harris and Stone are the former CEO and CFO, respectively, of U.S. Aggregates, Inc. Harris and Stone are defendants in several securities fraud class action lawsuits filed in May, 2001, now pending in this Court as a consolidated lawsuit under the caption *In re U.S. Aggregates, Inc. Securities Litigation,* Master File No. 01–1688. As officers and directors of U.S. Aggregates, Harris and Stone were insured against liability for securities fraud claims brought against them pursuant to the terms of a Directors and Officers Liability and Company Indemnification Insurance Policy, policy

number GA0490710, issued by Defendant Gulf. As relevant here, that policy provided that Gulf would pay any loss incurred by the directors and officers of U.S. Aggregates as a result of any claims alleging that they committed a wrongful act, defined as "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed or attempted, or allegedly committed or attempted." Harris and Stone timely requested that Gulf provide a defense for them in the underlying securities fraud action. Gulf agreed to do so pursuant to a reservation of rights, and did indeed reimburse reasonable litigation expenses for a period of time.

However, on January 3, 2003, Gulf informed Harris and Stone that it would no longer fund the reasonable costs of defending against the underlying securities fraud action. Gulf asserted that the recently filed consolidated amended complaint in the underlying action referenced conversations with confidential informants who were officers of subsidiaries of U.S. Aggregates, rendering applicable the "insured vs. insured exclusion" in the insurance policy. That exclusion provides that:

> The Insurer shall not be liable to make any payments for Loss in connection with any Claim made against any of the Directors and Officers: . . .
>
> (6) brought or maintained by or on behalf of the Insured Company and/or Directors or Officers or by any security holder of the Insured Company whether directly or derivatively except:
>
> > (a) a Claim that is brought and maintained by security holders who are acting totally independently of, and totally without the solicitation, assistance, participation, or intervention of any Director or Officer of the Insured Company.

Harris and Stone contend that this exclusion is inapplicable under the facts pre-

sented here, where two "officers" of U.S. Aggregates, as that term is used in the insurance policy, made statements in response to questions by a person who contacted each of them by telephone and identified him or herself as a representative of the plaintiffs in the securities fraud class action.

Harris and Stone brought this action seeking a declaratory judgment that this exclusion is inapplicable and Gulf is obliged to pay the costs of defending them in the pending securities fraud litigation. The parties have filed cross motions for summary judgment based on the stipulated facts recited here. The parties have stipulated that the motions for summary judgment "shall be limited" to issue of whether "Gulf was warranted in declining coverage pursuant to the 'insured vs. insured' exclusion based on the stipulated facts." The parties further agreed that "if Gulf is able to establish the application of the 'insured vs. insured' exclusion based on the Stipulated Facts, then Gulf shall be entitled to summary judgment; however, if Gulf is unable to establish the application of the 'insured vs. insured' exclusion based on the Stipulated Facts, then Gulf shall be found to owe a duty to advance Harris's and Stone's Defense Costs pursuant to Section V.B of the Policy."

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. Proc. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Eisenberg v. Ins. Co. of N. Am.,* 815 F.2d 1285, 1288–89 (9th Cir.1987).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Eisenberg,* 815 F.2d at 1289. The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Intel Corp. v. Hartford Accident & Indem. Co.,* 952 F.2d 1551, 1558 (9th Cir.1991).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. The moving party is not required to produce evidence showing the absence of a material fact on such issues, nor must the moving party support its motion with evidence negating the non-moving party's claim. *Id.; see also Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 885, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Bhan v. NME Hosps., Inc.,* 929 F.2d 1404, 1409 (9th Cir.1991), *cert. denied,* 502 U.S. 994, 112 S.Ct. 617, 116 L.Ed.2d 639 (1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the opposing party to produce "specific evidence, through affidavits

or admissible discovery material, to show that the dispute exists." *Bhan,* 929 F.2d at 1409. A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

Where the moving party bears the burden of proof on an issue at trial, it must, in order to discharge its burden of showing that no genuine issue of material fact remains, make a *prima facie* showing in support of its position on that issue. *See UA Local 343 v. Nor–Cal Plumbing, Inc.,* 48 F.3d 1465, 1471 (9th Cir.1994). That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. *See id.; see also Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264–65 (5th Cir.1991). Once it has done so, the non-moving party must set forth specific facts controverting the moving party's *prima facie* case. *See UA Local 343,* 48 F.3d at 1471. The non-moving party's "burden of contradicting [the moving party's] evidence is not negligible." *Id.* This standard does not change merely because resolution of the relevant issue is "highly fact specific." *See id.*

## DISCUSSION

 The parties dispute the meaning of the "insured vs. insured" exclusion in the insurance policy at issue. California law governs the interpretation of the insurance policy:

> Insurance policies are contracts and, therefore, are governed in the first instance by the rules of construction applicable to contracts. Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs its interpretation. Such intent is to be inferred, if possible, solely from the written provisions of the contract. The clear and explicit meaning of these provisions, interpreted in their ordinary and popular sense, controls judicial interpretation unless used by the parties in a technical sense, or unless a special meaning is given to them by usage. If the meaning a layperson would ascribe to the language of a contract of insurance is clear and unambiguous, a court will apply that meaning.
>
> In contrast, if there is ambiguity it is resolved by interpreting the ambiguous provisions in the sense the promisor (i.e., the insurer) believed the promisee understood them at the time of formation. If application of this rule does not eliminate the ambiguity, ambiguous language is construed against the party who caused the uncertainty to exist. This rule, as applied to a promise of coverage in an insurance policy, protects not the subjective beliefs of the insurer but, rather, the objectively reasonable expectations of the insured. Only if this rule does not resolve the ambiguity do we then resolve it against the insurer.

*Montrose Chem., Corp. v. Admiral Ins. Co.,* 10 Cal.4th 645, 666–67, 42 Cal.Rptr.2d 324, 913 P.2d 878 (1995) (internal quotation marks and citations omitted). Further, "in the insurance context, [the courts] generally resolve ambiguities in favor of coverage." *AIU Ins. Co. v. Super. Ct.,* 51 Cal.3d 807, 822, 274 Cal.Rptr. 820, 799 P.2d 1253 (1990).

> [I]nsurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured, whereas exclusionary clauses are interpreted narrowly against the insurer. An insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. As we have declared time and again any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the

insured of its effect. Thus, the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language. The exclusionary clause must be conspicuous, plain and clear. This rule applies with particular force when the coverage portion of the insurance policy would lead an insured to reasonably expect coverage for the claim purportedly excluded. The burden is on the insured to establish that the claim is within the basic scope of coverage and on the insurer to establish that the claim is specifically excluded.

*MacKinnon v. Truck Ins. Exchange,* 31 Cal.4th 635, 648, 3 Cal.Rptr.3d 228, 73 P.3d 1205 (2003).

 "[I]n order to ascertain the scope of an exclusion, [the Court] must first consider the coverage language of the policy." *Id.* at 649, 3 Cal.Rptr.3d 228, 73 P.3d 1205. As relevant here, the insurance policy at issue obliged Gulf to pay "on behalf of the Directors and Officers Loss ... incurred by the Directors and Officers as the result of any Claim ... made against the Directors and Officers ... for a Wrongful Act." The policy further defined "Wrongful Act" as "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed or attempted, or allegedly committed or attempted, by one or more Directors or Officers, individually or collectively, in their respective capacities as such." This coverage language is quite broad, establishing a reasonable expectation that the insured will be covered for making misleading statements, as Harris and Stone are alleged to have done in the underlying securities fraud complaint. "Coverage will therefore be found unless the ... exclusion conspicuously, plainly and clearly apprises the insured" that they will not be covered. *Id.*

Gulf contends that the exclusion does "conspicuously, plainly and clearly" apprise Harris and Stone that they will not be covered under the circumstances at issue here, because the underlying action has not been maintained without the assistance of U.S. Aggregates' officers and directors. The exclusionary clause precludes coverage for any claim "brought or maintained ... by any security holder" unless the security holder is "acting totally independently of, and totally without the solicitation, assistance, participation, or intervention of any Director or Officer." Gulf interprets this exclusion to preclude coverage if any director or officer provides any help or aid to the plaintiffs in the securities fraud class action. In support of this construction, Gulf points to dictionary definitions of the word "assistance." However, the California Supreme Court has clearly rejected such an approach, calling the "conclusion that the meaning of policy language is to be discovered by citing one of the dictionary meanings of the key words" a "basic fallacy" of contract interpretation. *Id.* at 649, 3 Cal.Rptr.3d 228, 73 P.3d 1205. Instead, the words of the insurance contract must be interpreted in context in order to ascertain how they would be understood by a reasonable layperson. *Id.*

The unreasonableness of Gulf's interpretation becomes clear when its full implications are considered. *See id.* at 650, 3 Cal.Rptr.3d 228, 73 P.3d 1205 (considering the full implications of the insurer's interpretation in order to determine whether that interpretation is reasonable). Under Gulf's interpretation, if a director or officer were subpoenaed to testify at a deposition or trial and made any statement that was of use to the securities fraud plaintiff, coverage under the policy would evaporate. Similarly, if a representative of the plaintiff contacted a director or officer, lied about the purpose of the call, and obtained

information useful for the plaintiff, coverage would evaporate. The Court cannot adopt an interpretation that would lead to such absurd results. *See Transamerica Ins. Co. v. Sayble,* 193 Cal.App.3d 1562, 1566, 239 Cal.Rptr. 201 (1987) ("The interpretation must be fair and reasonable, not leading to absurd conclusions."); Cal. Civ. Code § 1638.

The unreasonableness of Gulf's interpretation of the exclusion is further demonstrated by the fact that, if the Court were to adopt Gulf's interpretation, the exclusion would tread dangerously close to violating the public policy of the State of California. As Gulf admitted at oral argument, its interpretation of the exclusion would create a strong incentive for companies to prevent their directors and officers from providing information to securities fraud plaintiffs in order to avoid the loss of insurance coverage. "Agreements to suppress evidence have been held void as against public policy." *Williamson v. Super. Ct.,* 21 Cal.3d 829, 836, 148 Cal.Rptr. 39, 582 P.2d 126 (1978) (allowing plaintiff to discover an expert report even though the defendant who employed the expert subsequently withdrew him as a witness, because that withdrawal was based on a promise of indemnification from the co-defendant regarding whom the expert report was unfavorable); *see also Smith v.Super. Ct.,* 41 Cal.App.4th 1014, 49 Cal. Rptr.2d 20 (1996) (refusing to enforce a permanent injunction entered by a court in another State in which a former employee promised not to testify against his former employer in any proceeding involving allegedly defective products). While under Gulf's interpretation, the exclusion would not be an illegal agreement to suppress evidence, it would create strong incentives for such suppression of evidence, to the detriment of the interests of the public as a whole. The Court declines to interpret the exclusion in such a manner. *Cf. United States v. Sacramento Mun. Util. Dist.,* 652 F.2d 1341, 1346 (9th Cir.1981) ("It is a well-settled principle that ambiguously worded contracts should not be interpreted to render them illegal if a legal construction is plausible.").

Finally, Gulf's interpretation of the exclusion is unreasonable because it would render the coverage provided by the policy illusory. Under Gulf's interpretation, a director or officer would no longer be covered any time that any other director or officer provided any information that aided the plaintiffs in a securities fraud action. The circumstances under which this could happen are quite broad, as noted above. No reasonable insured would expect to have the continuation of his or her insurance coverage depend upon chance in such a manner. *See* Cal. Civ.Code § 1649 ("If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it."); *Rose v. Chrysler Motors Corp.,* 212 Cal.App.2d 755, 759, 28 Cal.Rptr. 185 (1963) ("We cannot hold that the instant document must be given an interpretation that would provide only 'illusory' protection, and which, considered in the context of the basic warranty made, would be tantamount to a fraudulent defeat of the natural understanding of the purchaser.").

For all these reasons, Gulf's interpretation of the term "assistance" as used in the exclusion is patently unreasonable. The Court instead holds that the exclusion bars coverage for securities fraud claims only if a director or officer actively and voluntarily provided substantial aid or help to a securities fraud plaintiff with the intent to aid the prosecution of the lawsuit in order to obtain an economic benefit. This interpretation avoids the problems of absurdity, violations of public policy, and illusory cov-

erage inherent in Gulf's proposed interpretation, while providing Gulf with protection from collusive suits, which was apparently the primary reason that such exclusions were adopted. *See, e.g., Fid. & Deposit Co. of Md. v. Zandstra,* 756 F.Supp. 429, 431–32 (N.D.Cal.1990) (noting that "insured vs. insured" exclusion was adopted to prevent collusive suits).

Here, two "officers" of U.S. Aggregates provided information to the securities fraud plaintiffs. That information aided the prosecution of the securities fraud action, in that the Court specifically relied upon the statements of one of these confidential witnesses when denying Defendants' motion to dismiss the consolidated amended complaint. However, the stipulated facts do not demonstrate that the officers provided such information in order to obtain an economic benefit. Therefore, the stipulated facts do not establish that the officers provided "assistance" sufficient to invoke the "insured vs. insured" exclusion. For this reason, the Court finds, based upon the parties' stipulation, that Gulf owes "a duty to advance the Harris's and Stone's Defense Costs pursuant to Section V.B of the Policy."[1] Stipulation at 2.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion for partial summary judgment and DENIES Defendant's motion for summary judgment. Defendant shall have a duty to advance Harris and Stone's defense costs pursuant to the provisions of the insurance policy.

IT IS SO ORDERED.

---

1. Gulf argues it was duped into presenting the coverage dispute to the Court on the basis of the stipulated facts and therefore that the Court should disregard the provision of the stipulation that requires it to advance defense costs to Harris and Stone if it is not able to establish that it is entitled to summary judgment on the basis of the stipulated facts. The Court rejects Gulf's argument as unsupported by the terms of the stipulation and the facts presented to the Court regarding the context in which it was made. The stipulation provided the parties with an opportunity to argue their differing interpretations of the meaning of the exclusion to the Court on the basis of the facts known to the parties. For Gulf, the benefit of the stipulation was that if the Court were to adopt its interpretation of the exclusion, it would be relieved of its obligation to provide a defense to Harris and Stone without having to engage in potentially expensive and unnecessary discovery regarding the circumstances under which the confidential witnesses provided information to the securities fraud plaintiffs. For Harris and Stone, the benefit of the stipulation was that it allowed them the possibility of obtaining benefits more expeditiously than they would have been able to if the parties had to engage in discovery first. However, apparently recognizing that Gulf might be able to prevail on the basis of a more developed factual record even if the Court were to reject its interpretation of the exclusion, the stipulation only obligated Gulf to advance defense costs and not to provide a defense. Gulf has provided the Court with no reason for relieving it of this voluntarily negotiated obligation.