Stanley JAMPOLE, et al., Relator,

v.

Hon. Hugo TOUCHY, et al.,
Respondent.

No. C–2125.

Supreme Court of Texas.

June 27, 1984.

Rehearing Denied July 18, 1984.

**572**

W. Douglas Matthews, Timothy F. Lee, Schmidt & Matthews, Houston, for relator.

Fulbright & Jaworski, Frank G. Jones and James B. Sales, Houston, Strasburger & Price, W. Richard Davis, Dallas, for respondent.

## ORIGINAL MANDAMUS PROCEEDING

SPEARS, Justice.

In this original mandamus proceeding, Stanley Jampole asks this court to direct Judge Hugo Touchy of the 129th District Court in Harris County to vacate an order denying certain pre-trial discovery. We conditionally grant the writ of mandamus.

Stanley Jampole brought a products liability suit to recover damages for the death of his wife, Judith Goodley Jampole. Mrs. Jampole died from injuries suffered on April 14, 1979, when her 1976 Chevrolet Vega caught fire after being struck from the rear by another automobile. Mr. Jampole sued the driver of the other car, General Motors Corporation, and the Chevrolet Division of General Motors, but only the latter two ("GMC") are affected by this mandamus proceeding.

The type of accident forming the basis of this suit is commonly known as a post-collision, fuel-fed fire. Jampole seeks to hold GMC liable on theories of strict liability, negligence, and breach of warranty. He alleges that the 1976 Vega hatchback was defectively designed, manufactured, and marketed. Jampole maintains that placing the fuel tank of the Vega between the rear axle and bumper was unreasonably dangerous. He specifically claims that the design made the tank vulnerable to rear-end impacts, resulting in fuel leaking into the passenger compartment and igniting. Jampole alleges that GMC knew of the defect, risks, and safer alternatives, but did nothing. GMC's alleged knowledge and failure to act are asserted as grounds for punitive and exemplary damages.

Jampole seeks a writ of mandamus requiring Judge Touchy to vacate portions of an order that denied Jampole's motion to compel GMC to answer certain interrogatories and requests for production. Jampole originally sought a writ of mandamus on the same basis against Judge Thomas J. Stovall, who first heard and ruled on Jampole's motion. After this court granted Jampole leave to file his petition for writ of mandamus, Judge Touchy replaced Judge Stovall in the 129th District Court. Jampole properly asked this court to delay action on his petition while he requested that Judge Touchy reconsider Judge Stovall's order. *See State v. Olsen*, 163 Tex. 449, 360 S.W.2d 402 (1962). Judge Touchy reaffirmed the prior order, and we granted Jampole's motion to amend his petition to substitute Judge Touchy as respondent.

Jampole complains that the trial court's order denied him discovery of the following types of information: (1) evidence of alternate fuel storage system designs that were known to GMC; (2) installation and assembly diagrams and specifications for 1971–77 Chevrolet Vegas and their counterpart Pontiac Astres; (3) documents revealing how GMC planned to comply with proposed federal motor vehicle safety standards that would have imposed more stringent standards for fuel storage system integrity; (4) documents pertaining to experimental, preproduction, and prototype models of the Vega; and (5) a master index listing all crash test reports available to GMC for 1971–77 Vegas and Astres and any vehicles incorporating certain design alternatives.

In deciding whether a writ of mandamus is appropriate, we recognize that mandamus will not issue unless a clear abuse of discretion is shown. *West v. Solito*, 563 S.W.2d 240 (Tex.1978); *Allen v. Humphreys*, 559 S.W.2d 798 (Tex.1977);

*Barker v. Dunham*, 551 S.W.2d 41 (Tex. 1977); *Crane v. Tunks*, 160 Tex. 182, 328 S.W.2d 434 (1959). Furthermore, appellate courts will not intervene to control incidental trial court rulings when there is an adequate remedy by appeal. *State Bar v. Heard*, 603 S.W.2d 829 (Tex.1980); *Werner v. Miller*, 579 S.W.2d 455 (Tex.1979); *State ex rel. Pettit v. Thurmond*, 516 S.W.2d 119 (Tex.1974); *Pope v. Ferguson*, 445 S.W.2d 950 (Tex.1969). We must first consider, then, whether Judge Touchy clearly abused his discretion by denying the requested discovery.

■ In making this determination, we note that the ultimate purpose of discovery is to seek the truth, so that disputes may be decided by what the facts reveal, not by what facts are concealed. *See West v. Solito*, 563 S.W.2d 240 (Tex.1978); *Pearson Corp. v. Wichita Falls Boys Club Alumni Ass'n*, 633 S.W.2d 684 (Tex.App.—Fort Worth 1982, no writ). For this reason, discovery is not limited to information that will be admissible at trial. To increase the likelihood that all relevant evidence will be disclosed and brought before the trier of fact, the law circumscribes a significantly larger class of discoverable evidence to include anything reasonably calculated to lead to the discovery of material evidence. *Allen v. Humphreys*, 559 S.W.2d 798, 803 (Tex.1977); Tex.R.Civ.P. 166b(2). This broad grant is limited, however, by the legitimate interests of the opposing party, for example, to avoid overly-broad requests, harassment, or disclosure of privileged information. *See General Motors Corp. v. Lawrence*, 651 S.W.2d 732 (Tex. 1983).

Jampole filed interrogatories to determine GMC's pre-accident knowledge of alternative designs that would have reduced the risk of fuel escaping from the Vega fuel tank on impact, entering the passenger compartment, and igniting. He specifically requested all impact tests for 1967–79 on vehicles with: (a) above-axle fuel tanks; (b) fuel tanks in other non-production locations; (c) fuel tanks containing flexible liners; (d) fuel tanks that were not made of the standard terne-plated steel (steel coated with a lead/tin alloy); (e) fuel tanks protected by deflector shields; and (f) fuel tanks equipped with break-away filler necks. Several interrogatories also asked about the design and performance of the 1973–75 Opel Kadetts, small cars manufactured by a foreign subsidiary of GMC and designed with an above-axle fuel tank.

The trial court limited discovery to knowledge and information based on records pertaining to 1971–77 Vegas and Astres. The trial court was persuaded that other vehicles were not substantially similar to the Jampoles' 1976 Vega Hatchback; therefore, he concluded that tests on those vehicles were not relevant.

■ Jampole contends that it was a clear abuse of discretion for the trial court to deny discovery of alternate design documents. Jampole argues that the requested documents are relevant to his strict liability claim because they could show the availability and feasibility of safer alternatives. In *Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 746 (Tex.1980), we held that whether a product is defectively designed must be determined in relation to safer alternatives; thus, evidence of the actual use of, or capacity to use, safer alternatives is relevant. *See also Ford Motor Co. v. Nowak*, 638 S.W.2d 582, 585 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). The basic issue in this lawsuit is whether the 1976 Vega hatchback fuel tank design was defective because it allowed fuel to escape. Other designs that may have prevented fuel escaping are relevant to show that the Vega tank was unreasonably dangerous. Furthermore, the documents showing GMC's knowledge of alternative designs are relevant to show conscious indifference in support of Jampole's claim of gross negligence.

■ The trial court, in balancing the rights of the parties, took an unduly restrictive view of the degree of similarity necessary for tests on other vehicles to be relevant. The automobiles need not be identical in order for tests on one to be relevant in determining whether the design

of another is defective. Design differences between vehicles that might prevent certain alternatives from being adapted to the hatchback design do not necessarily undermine the relevance or discoverability of documents relating to those alternatives. Whether a safer fuel system design suitable for one vehicle is adaptable to another is a question of feasibility to be decided by the trier of fact, not a question to be resolved in ruling on discovery requests. Moreover, if it were impossible to incorporate a safer design in the fuel system of a 1976 Vega Hatchback, the existence of that design would be relevant to establish liability for failure to warn. The time period requested is not overly broad, and Jampole has limited his request to include only tests on GMC passenger cars. There being no valid claim of privilege or limitation invoked, the trial court's denial was a clear abuse of discretion.

GMC argues that because the trial judge conscientiously heard argument from both sides, his order is not an abuse of discretion. The issue, however, is not the degree of care exercised. Rather, the focus is on the effect of the trial court's action on the substantial rights of the parties. The order in this case denied clearly relevant information that is crucial to Jampole's cause of action. Furthermore, although it may be proper in complex litigation such as this to grant discovery in phases, there is no statement anywhere in the trial court order purporting to reserve judgment or postpone any ruling. In unequivocal language, the order states that all of GMC's objections were sustained, except those specifically overruled.

██ We also reject GMC's argument that because Jampole was free to "come back to the well"—that is, to attempt to persuade the trial court to reconsider—the trial court's action was not an abuse of discretion. First, the statement referred to was not made by Judge Touchy; it was only made by his predecessor, Judge Stovall. Moreover, the trial court's willingness to reconsider does not alter the finality of its ruling. Litigants can always make new arguments that may change the trial court's mind. This does not, however, preclude complaining of the action already taken. It is the court's order that counts, not the stated reasons or oral qualifications. *See In re W.E.R.*, 669 S.W.2d 716 (Tex. 1984) (per curiam); *Kinney v. Shugart*, 234 S.W.2d 451 (Tex.Civ.App.—Eastland 1950, writ ref'd); *Cf. Davis v. Hemphill*, 243 S.W. 691 (Tex.Civ.App.—Fort Worth 1922, no writ) (opinion or reasons given by judge constitute no part of judgment); *accord Chandler v. Reder*, 635 S.W.2d 895 (Tex. App.—Amarillo 1982, no writ).

██ Jampole next complains of the trial court's action in denying discovery of assembly diagrams and instructions. Comparing GMC's assembly instructions and diagrams with the fuel system of the Jampoles' Vega as it was actually manufactured is a proper aid in determining whether manufacturing defects exist. The documents requested are therefore relevant to Jampole's manufacturing defect allegations. GMC's primary objection was not, however, based on lack of relevance. Instead, GMC argued that the diagrams and specifications were competitively sensitive and had proprietary value. The trial court apparently agreed and ruled that GMC was not required to produce any assembly instructions, drawings, or documents.

██ Although a valid proprietary interest may justify denying or limiting discovery requested by a direct competitor, *Automatic Drilling Machines, Inc. v. Miller*, 515 S.W.2d 256 (Tex.1974), this is not such a case. Jampole is not GMC's business competitor, and GMC acknowledged that, if the documents were relevant, any proprietary interest could be safeguarded by a protective order. Under these circumstances, it was an abuse of discretion for the trial court to deny discovery of the assembly documents. We do not decide whether GMC has shown a sufficient proprietary interest to justify a protective order. We hold that discovery cannot be denied because of an asserted proprietary interest in the requested documents when a

protective order would sufficiently preserve that interest.

Jampole's remaining complaints fail to establish abuses of the trial court's discretion. Jampole argues that he was denied discovery relating to two proposed federal motor vehicle safety standards, GSA 515/26 and FMVSS 301. According to Jampole, these federal standards, first proposed in 1967, would have significantly strengthened fuel system integrity requirements. Jampole's expert stated that although the standards were ultimately diluted, until the relaxed standards were adopted, car manufacturers were developing fuel system designs capable of meeting the stricter standards. Jampole requested all documents reflecting GMC's efforts and plans to comply. GMC initially objected, but in its written response GMC agreed to produce certain types of documents relating to the 1976 Vega and public comments prepared by GMC in response to the proposed standards. At the hearing on Jampole's motion, however, the trial judge clearly expressed his understanding and intention that GMC would diligently search for and produce *all* documents responsive to Jampole's request. Counsel for GMC conceded in oral argument and in their post-submission brief that they were obligated under the trial court's order to fully comply with Jampole's request.

■■■■ The source of Jampole's concern is that the wording of the trial court's order only requires GMC to produce that which GMC agreed to produce, along with a sworn statement by GMC describing what was being produced. The order does not specify what it was that GMC agreed to produce. Although this language standing alone is unclear, the trial court's intent to give Jampole all he requested is clear. If GMC's production is incomplete or unresponsive, Jampole's remedy is to seek a clarification of the trial court's order and, if necessary, sanctions. A writ of mandamus compelling the trial judge to do that which has already been done, however, is not appropriate.

■■■■ Jampole also claims the trial court's order denied him discovery of information on experimental, prototype, and pre-production models of the Vega. The order provides: "... General Motors' objections are sustained, except that General Motors shall be required to answer the interrogatories and produce documents and things based on a review of its records *pertaining to* the Chevrolet Vega and Pontiac Astre for the model years 1971 through 1977." (emphasis added). This language does not have the effect ascribed to it by Jampole. Documents concerning experimental, prototype, and pre-production models clearly "pertain to" the actual production models, and GMC concedes this is the plain meaning of the trial court's order. We note in passing, however, that requested information is discoverable unless a valid objection is interposed. *See* Tex.R.Civ.P. 167(1)(d); 168(6). For this reason, a better practice would be for the trial court order to state that objections are overruled except for those specifically sustained.

■■■■ Jampole's final complaint is that he was denied certain master crash test indices. Jampole requested production of "master vehicle crash test indices" listing by test number and type of test the impact tests already requested. On appeal, the parties contest whether any master indices exist and, if so, what the content of such indices is. We do not decide the merits of these arguments, nor do we consider the affidavits and exhibits filed on appeal supporting the parties' positions, because these are factual disputes. *See West v. Solito*, 563 S.W.2d 240, 245 (Tex.1978). The trial court ordered GMC to produce a listing of all the crash tests that GMC was already required to produce under other provisions of the trial court's order. Although this listing did not require production of any additional material, it gave Jampole exactly what he requested. If indices exist containing information not reached by the trial court's order, Jampole's request does not sufficiently describe them. For this reason, Jampole has failed to show that the trial court abused its discretion. Of course, the wording of the order will

cause the list to expand to include tests produced in conformity with this decision.

 Having found that the trial court abused its discretion by denying discovery of alternate design and assembly documents, the remaining issue is whether Jampole has an adequate remedy by appeal. On two recent occasions this court granted writs of mandamus compelling trial courts to vacate orders denying discovery. In *Barker v. Dunham*, 551 S.W.2d 41 (Tex.1977), the trial court improperly denied discovery of calculations made by defendant's vice-president, who was also a potential expert witness. We held in *Allen v. Humphreys*, 559 S.W.2d 798 (Tex.1977), that denying discovery of tests, surveys, and complaints by similarly affected persons was a clear abuse of discretion requiring a writ of mandamus, because the documents were relevant to show causation.

The issue of whether the parties seeking mandamus in *Barker* and *Allen* had adequate remedies by appeal was not specifically addressed. Nevertheless, GMC acknowledges that to accept its contention that Jampole does have an adequate remedy by appeal, we must overrule those cases. We decline to do so. The trial court's action in this case effectively prevents Jampole from proving the material allegations of his lawsuit. On appeal, it is unlikely he would be able to show that the trial court's errors were harmful under the standard set out in Rules 434 and 503. Tex.R.Civ.P. 434, 503. Because the evidence exempted from discovery would not appear in the record, the appellate courts would find it impossible to determine whether denying the discovery was harmful. It is no answer to presume harm whenever a party can show on appeal that proper discovery was denied. Such a rule

would reinstate the abandoned doctrine of presumed harm. *See Standard Fire Insurance Co. v. Reese*, 584 S.W.2d 835, 839 n. 2 (Tex.1979). Moreover, requiring a party to try his lawsuit, debilitated by the denial of proper discovery, only to have that lawsuit rendered a certain nullity on appeal, falls well short of a remedy by appeal that is "equally convenient, beneficial, and effective as mandamus." *Crane v. Tunks*, 160 Tex. 182, 328 S.W.2d 434, 439 (1959); *Way & Way v. Coca Cola Bottling Co.*, 119 Tex. 419, 29 S.W.2d 1067, 1071 (1930); *Cleveland v. Ward*, 116 Tex. 1, 285 S.W. 1063, 1068 (1926).

We expect that Judge Touchy will vacate his order denying discovery of evidence of alternate designs and assembly documents and will enter an order consistent with this opinion. Should he fail to do so, the clerk of the supreme court is directed to issue the writ of mandamus.

BARROW, J., dissents.

BARROW, Justice, dissenting.

I respectfully dissent. After a review of this record, I cannot agree that Judge Thomas J. Stovall and his successor, Judge Hugo Touchy, clearly abused their admittedly broad discretion in limiting Jampole's request for discovery of several specific types of information. Further, the court's opinion fosters matters of policy with which I disagree.

No area of civil trial law has been the subject of such heightened criticism and scrutiny over the past decade as pretrial discovery. The need for improvements in the state and federal systems have been urged by many legal writers, including the Chief Justice of the United States Supreme Court and members of this court.[1] In response, this court recently promulgated

---

**1.** *See generally* Annual Message on the Administration of Justice from Chief Justice Warren E. Burger (Midyear Meeting of the American Bar Association, February 12, 1984) (available from United States Supreme Court Public Information Office); Pope & McConnico, *Practicing Law with the 1981 Texas Rules*, 32 Baylor L.Rev. 457, 460–68 (1980); Spears, *The Texas Rules of Civil*

*Procedure: 1981 Changes in Pre-Trial Discovery*, 12 St. Mary's L.J. 633, 647–49 (1981); Kilgarlin & Jackson, *Sanctions for Discovery Abuse Under New Rule 215*, 15 St. Mary's L.J. 767 (1984); Barrow & Henderson, *1984 Amendments to the Texas Rules of Civil Procedure Affecting Discovery*, 15 St. Mary's L.J. 713 (1984).

amendments to the Texas Rules of Civil Procedure. Virtually every rule concerned with pretrial discovery was modified and updated. These amendments place upon trial judges the primary responsibility for arresting discovery abuses.

This case furnishes the court with a unique opportunity to support the efforts of Texas trial judges in curbing discovery abuses. Rather than seizing upon this opportunity and expressing confidence in trial judges, the court has now unnecessarily usurped the discretion of the trial judge. From this decision emanates a signal to the trial judge in contradiction of the court's prior attitude in this context and of the basic purpose of the amended rules of discovery. *See Werner v. Miller*, 579 S.W.2d 455, 457 (Tex.1979).

While I or any other judge on hearing this matter might have granted more or less discovery than Judge Stovall did, it is clear that the interlocutory order signed here was the result of a full hearing by a conscientious trial judge. If this case involves a clear abuse of discretion, no trial judge is safe from the heavy hand of a mandamus action.

From a reading of the 332 page record, it is apparent that both parties in this major lawsuit had taken advocative positions that would have to be compromised during the course of discovery. Hence, Jampole's discovery requests were unnecessarily broad, and GMC's responses were unduly restrictive. Faced with the arduous task of determining the proper scope of discovery, Judge Stovall, an experienced trial judge, conducted a full two day hearing, including an actual examination of an allegedly similar vehicle, considered each request individually, and attempted to balance the interests and rights of both litigants. In fact, he granted, at least in part, substantially all the requests including all discovery requested relating to H-body type of vehicles irrespective of the model. It is obvious that Judge Stovall contemplated an ongoing discovery process, as he often stated that he would allow or disallow requested documents "at this level of the case."

Moreover, at the end of the second hearing, after directing GMC to produce the requested information within sixty days, Judge Stovall reiterated that both parties were free to "come back to the well" if further discovery was desired.

After oral argument of this proceeding in this court, Judge Stovall resigned and was succeeded by Judge Touchy. Only a brief hearing was held before Judge Touchy, and he simply ratified Judge Stovall's order so that this mandamus action could be determined. It is not fair or reasonable to speculate that he will be more restrictive in permitting future discovery than Judge Stovall.

It is essential that a trial judge be permitted to conduct an orderly pretrial process without the interference of the appellate court. *See Werner v. Miller*, 579 S.W.2d 455. By delaying a ruling on one aspect of the case, the trial judge may subsequently be in a better position to rule correctly since he will have had the opportunity to receive more evidence and derive more facts. *See In re IBM Peripheral EDP Devices Antitrust Litigation*, 77 F.R.D. 39 (N.D.Cal.1977).

Perhaps the most disturbing aspect of the court's holding is that it promotes an attitude towards discovery with which I cannot agree. Mandamus traditionally has been an extreme measure to be utilized only when there has been a violation of a clear legal right possessed by the relator, *Neville v. Brewster*, 163 Tex. 155, 352 S.W.2d 449, 452 (1961), and when there is a clear legal duty to act on behalf of the respondent. *Pat Walker & Co., Inc. v. Johnson*, 623 S.W.2d 306, 308 (Tex.1981). Unless the law dictates "an absolute and rigid duty of the trial court to follow a fixed and prescribed course not involving the exercise of judgment or discretion," the court should be hesitant to grant relief by writ of mandamus. *See State Bar of Texas v. Heard*, 603 S.W.2d 829, 833 (Tex. 1980). Thus, the discretionary nature of discovery and the amorphous notion of relevancy most often counsel against appellate court intervention into the discovery

process. *See Pat Walker & Co., Inc. v. Johnson*, 623 S.W.2d at 308.

The concept of relevance is not susceptible of exact definition. Nonetheless, relevance does implicate a balancing of the probative value of the information sought and the burden upon the movant if discovery is denied weighed against the burden placed upon the respondent if discovery is granted. *See General Motors Corp. v. Lawrence*, 651 S.W.2d 732, 733–34 (Tex.1983); *cf. Automatic Drilling Machines, Inc. v. Miller*, 515 S.W.2d 256, 259 (Tex.1974). If relevance is shown by this balancing process, the trial judge nonetheless may direct "that requested discovery not be sought in whole or in part" if the circumstances of the case so require. Tex. R.Civ.P. 166b(4)(a). Obviously, then, the trial judge *may* limit discovery of relevant evidence.

Less than one year ago this court observed that over the past twenty-five years it had been flooded with mandamus actions to either compel or deny discovery. *General Motors Corp. v. Lawrence*, 651 S.W.2d at 734. Today's decision effectively insures that this flood will continue and increase into a rampage. The majority has failed to heed the warning echoed by our predecessors against "entering the thicket" by constant interruptions of the trial process. *See Pope v. Ferguson*, 445 S.W.2d 950, 954 (Tex.1969), *cert. denied*, 397 U.S. 997, 90 S.Ct. 1138, 25 L.Ed.2d 405 (1970); *see also State Bar of Texas v. Heard*, 603 S.W.2d at 836. We have now not only "entered the thicket," we have become totally enshrouded in that thicket. I respectfully dissent.

SPEARS, Justice.

## ON MOTION FOR REHEARING

■ Jampole expresses concern that the court's opinion is unclear as to whether he is entitled to certain documents sought but for which mandamus does not lie. The documents are those relating to GMC's efforts and plans to comply with proposed federal motor vehicle safety standards known as GSA 515/26 and FMVSS 301, and those relating to experimental, prototype, and pre-production crash testing. We view all of the requested documents as discoverable; however, we need not mandamus the trial court to order discovery of those items which have not been specifically denied.

Jampole is entitled to these documents. We expect that the trial court will order full discovery in accordance with our opinion; therefore, we overrule Jampole's motion for rehearing. GMC's motion is likewise overruled.