**GULF OIL CORPORATION, Relator,**

v.

**The Honorable Lawrence L. FULLER, Judge of the 143rd Judicial District Court of Ward County, Texas, Respondent.**

No. 08–85–00169–CV.

Court of Appeals of Texas, El Paso.

Aug. 7, 1985.

Robert C. Bledsoe, Charles Tighe, Julia E. Vaughan, Cotton, Bledsoe, Tighe & Dawson, Midland, Catherine C. McCulley, Susan R. Sewell, Houston, for relator.

Lawrence L. Fuller, Judge of the Dist. Court of Ward County, Monahans, W.N. Blanton, III, Dale C. Scott, Mike Short, Houston, W.B. Browder, Jr., Marc Skeen, Stubbeman, McRae, Sealy, Laughlin & Browder, Inc., Irby L. Dyer, Mark L. Withrow, Turpin, Smith, Dyer & Saxe, Midland, Ronald O. Holman, Robertson, Miller & Taylor, Dallas, Randolph P. Mundt, Fort Worth, Fletcher L. Yarbrough, Lindsay H. Lew, Carrington, Coleman, Sloman & Blumenthal, Dallas, William G. Solomon, Michael W. Lattimore, Tom B. Cuny, Houston, Robert C. Grable, Wesley N. Harris, Kelly, Appleman, Hart & Hallman, Fort Worth, Richard R. Myers, Dee H. Richardson, Midland, Edgar K. Parks, John Robertson, Houston, Harper A. Estes, Lynch, Chappell, Allday & Alsup, Midland, Jesse R. Pierce, Porter & Clements, Houston, Daniel G. Rodgers, Theodie L. Peterson, III, Dallas, for respondent.

Before WARD, OSBORN and SCHULTE, JJ.

## OPINION

WARD, Justice.

This is an original mandamus proceeding brought by Gulf Oil Corporation against the Honorable Lawrence L. Fuller, Judge of the 143rd Judicial District Court of Ward County, Texas, asking this Court to order the trial court to vacate and set aside portions of the discovery order of June 20, 1985 wherein: 1) Gulf had been ordered to produce certain so called "Technical Committee" documents and 2) it was held that Gulf had waived any privilege from discovery as to certain documents it had previously delivered to the Plaintiffs in the pending case and as to which the trial court refused to order their return to Gulf. We will refuse to grant the requested writ of mandamus.

Lee Monroe, Lydia A.G. Stratton, et al., the Plaintiffs below and sometimes referred to herein as the Monroe-Strattons are lessors in certain oil and gas leases covering lands in Ward and Reeves Counties. Gulf Oil Corporation and Superior Oil Company were the original lessees and the leases were committed to the Quito Unit Operating Agreement. Superior was designated in that agreement as the operator. The Quito Unit Operating Agreement was dated December 15, 1967, and all parties who contributed leasehold acreage and unleased mineral interests to the unit and who signed as parties thereto were: the Superior Oil Company ("Superior"), Gulf Oil Corporation ("Gulf" or "Relator"), Union Oil Company of California ("Union"), Perry R. Bass ("Bass"), Atlantic Richfield Company ("ARCO"), Mobil Oil Corporation ("Mobil"), Humble Oil and Refining Company ("Exxon"), Indian Royalty Company ("Indian Royalty"), Ralph Lowe Estate, George O. Shettle, Ted Collins, Jr. and Robert E. Tucker, Jr. An analysis of the agreement and other operating arrangements for purposes of the mandamus decision need not be as precise or detailed as might later be required for any appeal on the merits of the pending case. Suffice it to say that the agreement recognized the continuing liability and responsibility for payment by the individual lessees to their respective lessors for the various royalties established in the separate leases. On the other hand, an unrelated proportional division of the production from the field was established among the working interest holders. As pointed out, Superior was des-

ignated as the operator for the field. Later, for the sake of efficiency, Superior volunteered to undertake the role of royalty paymaster, with the understanding that it would assume no liability for underpayments caused by faulty information provided by the other working interest owners.

Difficulties arose when natural gas prices began to rise. Gulf was caught in a losing situation by being contractually bound to an earlier lower sale price with TUFCO, its gas purchaser. The other working interest owners were able to take advantage of the newer rising prices in their dealings with other gas purchasers. Of the royalty interests, the Monroe-Strattons were blessed with a fair market value lease as opposed to a proceeds lease.

While certain language of the Quito Operating Agreement recognized a continuation of individual lessor to lessee royalty obligations, other language in the agreement suggests that there was a cross-conveyance among the working interest owners. This, if true, would render all of the working interest owners directly liable to each of the royalty interest parties. Thus Gulf's lessors could demand a proportionate share of the higher gas prices obtained by the lessees not originally in privity with them.

In the summer of 1982, Monroe-Strattons as Plaintiffs sued Gulf in Ward County for fraud and nonpayment of royalties. On October 28, 1983, Gulf sued ARCO, Superior, Union, Bass, Shettle, Mobil, Indian, Collins, Humble, Tucker, Lowe, MiVida, McFarlane, Southland, Tenneco, AMOCO, Interfirst (Fort Worth) and Maralo in Midland County, seeking a declaratory judgment as to royalty liabilities under the Quito Operating Agreement. Plaintiffs were not a party to that suit. On November 22, 1983, Bass and MiVida sued Gulf, Superior, Union, ARCO, Mobil, Indian, Collins, Exxon (Humble), Maralo, Lowe, Shettle, McFarlane, Southland, Tenneco, AMOCO, Clajon, Herd, Redfern and Interfirst (Fort Worth) in Fort Worth, mimicking the earlier declaratory judgment sought by Gulf in Midland. Plaintiffs were not party to this suit

either. In early 1984, Superior intervened in the Ward County action as a defendant and filed a cross-claim against Gulf. On August 21, 1984, the Ward County Plaintiffs filed a Second Amended Petition joining all of the Midland and Fort Worth parties as codefendants.

In February, 1984, all the working interest owners formed what was called the Technical Committee to study the royalty problem arising out of the Quito Operating Agreement as affected by the change in natural gas prices. No attorneys were involved. The working interest holders sent representatives from their engineering and accounting departments to study the problem, develop interpretations of responsibility and generate a compromise among the working interest Defendants. The committee generated numerous documents. The documents and other fruits of the Technical Committee were intended to be kept confidential.

On January 17, 1985, the respondent District Judge ordered Gulf to make available certain documents sought by Plaintiffs by January 28. Gulf's counsel indicated that they would tender whatever they did not wish to claim as privileged and would provide a list of documents on which they would resist production. Apparently by agreement of the parties, the deadline was extended for several days, and tender was finally made in early February. At their Houston offices, Gulf employees separated a number of documents which were later claimed as intended to be privileged. These items which related to a previous TUFCO litigation were nonetheless tendered to Plaintiffs along with the other uncontested discovery materials.

On January 28, 1985, the court granted to Gulf a partial summary judgment on the cross-conveyance issue noted above, finding that the Quito Operating Agreement did effectuate a cross-conveyance among the Defendants. Thereafter, Bass, MiVida and others challenged the extent of the cross-conveyance ruling. Gulf then sought recovery of the "inadvertently" disclosed documents. A hearing was held on May

16, 1985, as to the various discovery issues. On June 20, 1985, the respondent issued an order that:

1) the Technical Committee documents, G–1 through G–7 and G–17 through G–22 were not exempt from discovery,

2) the inadvertently disclosed Gulf documents (36698, 36695, 36636, 36666, 36683, 36681, 36640, 36686, 36691, 36707, 36657, 36642, 36701, 36661, 36672 and 36659) had lost any privileged status by voluntary waiver; and

3) that certain other Gulf documents (A–3, A–8, A–10, A–123, A–129, A–132, B–5, B–6, B–11 through B–19, B–49, B–52, B–60 through B–72, B–85 and B–308) were exempt from discovery under Tex. R.Civ.P. Rule 166b(3)(a, d or e).

Gulf's present mandamus action seeks to prohibit the discovery of the Technical Committee documents and forestall the further retention and use of the documents whose privilege was found to be waived. Exxon, Bass and MiVida and a group of ten other Defendants have filed three response briefs. They uniformly adopt Gulf's position with regard to the Technical Committee documents, but they uniformly support the waiver of privilege ruling of the trial court as to Gulf's own records "inadvertently" disclosed.

The Monroe-Stratton Plaintiffs have brought by separate action a mandamus to compel the trial court to order discovery of the Gulf documents designated as item three above. That action is presently pending for decision in this Court.

## THE INADVERTENTLY DISCLOSED DOCUMENTS

The only issue here is waiver. That was the express basis for the court's ruling since the documents otherwise appear to be clearly attorney-client material. While some of the cases cited by Gulf emphasize accident or mistake in determining whether voluntary waiver has occurred, the facts of those cases actually support the result reached by the trial court.

In *Gass v. Baggerly*, 332 S.W.2d 426 (Tex.Civ.App.—Dallas 1960, no writ), the court found not only inadvertence but discovery without actual knowledge or consent of the complaining party's attorney where the papers were "found" on the Plaintiff's lawyer's desk. The case suggests a surreptitious examination by one attorney of the opposing attorney's file. *Eloise Bauer & Associates, Inc. v. Electronic Realty Associates, Inc.*, 621 S.W.2d 200 (Tex.Civ.App.—Texarkana 1981, writ ref'd n.r.e.) involved a "mistake" in judgment on the part of the privilege-asserting attorney. The document was reviewed by that attorney and then voluntarily released to the opponent, followed by a renege after second thoughts. There was no evidence produced to show that its production was accidental or inadvertent. The voluntary production operated to waive the attorney-client privilege. In *Fuller v. Preston State Bank*, 667 S.W.2d 214 (Tex.App.—Dallas 1983, writ ref'd n.r.e.), an in-house counsel letter to the defendant's trial counsel was included in discovery material tendered to the plainitff. The Court of Appeals stated that there was no evidence of accident or mistaken disclosure and in the absence of such evidence, the privilege was waived. It also held that upon a retrial the letter would be admissible unless proof of mistake was made. *Transamerica Computer Company, Inc. v. International Business Machines Corporation*, 573 F.2d 646 (9th Cir.1978) presents the most analogous fact situation. There the defendant was ordered to provide massive discovery in a very short time. The documents were screened to preserve privileged material, but mechanical, non-professional error resulted in several copies not having privileged material masked. The 9th Circuit held that the unusually demanding time frame for discovery caused the mechanical disclosure error and held that the court-imposed schedule amounted to compelled disclosure. In our present case, a large volume of documents was also involved and the resulting disclosure was arguably due to mechanical error. The discovery schedule nowhere approaches the same level of compulsion as in *Transamerica*. The trial

judge in our case set January 28, 1985, as a compliance date only after asking counsel for Gulf how much time was required. No complaint, formal or otherwise, was made concerning the schedule. In fact, by agreement of the parties, the time for compliance was extended for several days.

*Transamerica* does not support Gulf's position. It is in fact consistent with the position taken by Respondent Superior in interpreting Tex.R.Evidence, Rules 511 and 512. The privilege is not waived if disclosure is: 1) compelled erroneously or "de facto" compelled as in *Transamerica* or 2) made without opportunity to assert the privilege. Neither exception to Rule 512 is applicable here.

■ Applying these rules, it is apparent that the test of waiver is not whether the disclosure was intentional or inadvertent, but whether the disclosure was voluntary or was consented to or whether the disclosure was compelled erroneously or was made without opportunity to claim the privilege. Here the documents were voluntarily delivered and disclosed and a waiver was created. See: *In Re Grand Jury Investigation of Ocean Transportation*, 604 F.2d 672 (D.C.Cir.1979); *Chubb Integranted Suplems Limited v. National Bank of Washington*, 103 F.R.D. 52 (D.C.1984).

■ In the context of this case, there exists an even more fundamental reason why this Court should not interfere with the trial court's ruling regarding the inadvertently disclosed Gulf documents. The burden of proof to establish the existence of the privilege rested upon Gulf who claimed it and if conflicting evidence was presented upon this issue, the decision of the trial court must be deemed conclusive. *McGrede v. Rembert Nat. Bank*, 147 S.W.2d 580 (Tex.Civ.App.—Texarkana 1941, err. dism'd judgment correct). Further, an appellate court has no authority to issue the writ of mandamus where an issue of fact exists. *Dikeman v. Snell*, 490 S.W.2d 183 (Tex.1973).

In this connection, the chronology of events that preceded the evidentiary hearing on the waiver claim must be considered:

1. January 17, 1985. Summary Judgment hearing, at which time Judge Fuller directs Gulf to produce documents to the Plaintiffs related to the TUFCO litigation.

2. January 28, 1985. Judge Fuller grants Gulf's Motion for Partial Summary Judgment on the cross-conveyance issue.

3. Early March, 1985. Gulf produces TUFCO litigation documents to Plaintiffs. The documents produced to the Plaintiffs at this time include the ones at issue.

4. March 6, 1985. Perry Bass and Mi Vida file for reformation on the cross-conveyance issue.

5. March 7, 1985. Exxon files for reformation on the cross-conveyance issue. (Soon after this date, all other Defendants except Gulf file their own reformation counts.)

6. April 23, 1985. Plaintiffs' counsel allow the counsel for Exxon, Perry Bass, Mi Vida Partnership, Union Oil, ARCO, Mobil, Century Production Co., Ted Collins, Clayton Williams, and Robert Tucker to review some of the documents, including all of the documents at issue here, which Gulf had produced to the Plaintiffs in early March, 1985.

7. May 16 and 17, 1985. Evidentiary hearing on Gulf's Claim of Privilege.

■ The trial court apparently did not believe Gulf's claim that the production was inadvertent but felt that Gulf first took this position only after the reformation issue regarding the summary judgment was raised by all of the other Defendants except Gulf. The documents were pertinent to the question of whether or not a cross-conveyance had been created. The court also had before it the facts showing the extreme care used by Gulf and the ample time it had in furnishing the documents. The court was justified in finding that inadvertence did not exist but that Gulf had merely changed its position after

its partial summary judgment was challenged.

THE TECHNICAL COMMITTEE DOCUMENTS

Regardless of whether specific documents generated and presented at the Technical Committee meetings were originally ordered by various attorneys for Defendants, the critical question is whether dissemination at those meetings rendered the material subject to discovery. On one hand, it may be viewed as waiver; on the other, there would be no privilege at the outset. There are no findings of fact and conclusions of law, but the court's oral pronouncement in the statement of facts reflects that the court found no privilege due to the nature and interests of the participants to whom dissemination was made.

■ All of the Defendants are relying upon Gulf's assertion of a work product/common defense privilege. Where communications are exchanged between commonly aligned parties, such a privilege extends to those materials which further the common defense. *Magnaleasing, Inc. v. Staten Island Mall,* 76 F.R.D. 559 (S.D. N.Y.1977). In *Duplan Corporation v. Deering Milliken, Inc.,* 397 F.Supp. 1146, 1172 (D.S.C.1974), the court stated:

> A community of interest exists among different persons or separate corporations where they have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice. The third parties receiving copies of the communication and claiming a community of interest may be distinct legal entities from the client receiving the legal advice and may be a non-party to any anticipated or pending litigation. The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial.

The court recognized the joint defense privilege, *Duplan,* 397 F.Supp. at 1173, but concluded that it was not absolute and was relative to the precise legal interest shared.

■ In our case, there is obviously an overlap of both legal and commercial interest among the Technical Committee participants. Their relationship is, however, more adversary than cooperative, and the mutuality falls more in the area of commercial impact than legal. This is evidenced first by the course of litigation. Only Gulf was sued initially by the Monroe-Strattons in Ward County. Until the cross-conveyance theory emerged, strengthened by the partial summary judgment, the Plaintiffs had no direct cause of action against the other working interest owners. Even when Superior became a party, an immediate cross-action was filed with Gulf. In the Fort Worth and Midland cases, the working interest owners were purely adversaries and the Plaintiffs were not even parties. The working interest owners participating in the Technical Committee meetings were unable to arrive at an agreement on either the Gulf, Superior or Bass-MiVida propositions. The adversary postures continued through the cross-conveyance dispute and the discovery results. In the overall context of the suit, the adversary relationship between the working interest owners is far more significant that the joint defense against the Plaintiffs.

Two additional factors support a conclusion that the committee disseminations were not privileged. Some of the participants held both working interests and royalty interests. Secondly, at least in part, the goal of the committee was to resolve the claims of Bass and Superior against the other working interests for royalties which *had already been paid,* thus not involving any common conflict or defense against the Plaintiffs. Consequently, without a joint defense privilege the dissemination to the committee participants waived all confidentiality from discovery. One cannot pick and choose amongst his adversaries, waiving the privilege as to some but not others. *Permian Corporation v. United States,* 665 F.2d 1214, 1221 (D.C.Cir.1981).

It might finally be argued that the material generated by the committee was discoverable under the rationale of *Barker v. Dunham,* 551 S.W.2d 41 (Tex.1977). This

has not been raised by either side but is arguably applicable. In *Barker*, the expert qualifications of the Defendant's vice-president were clearly established in the record. The present record is not as neat, but it is apparent that the committee was composed of and its material produced by accounting and engineering experts from each of the working interest entities. There was no protective assertion by the Defendants that these experts would *not* be called to testify. In conclusion, it would appear that the documents produced by the committee were discoverable.

The Petition for Writ of Mandamus requested by Gulf is denied.