AXELSON, INC. and U.S. Industries, Inc., Relators,

v.

Hon. Grainger W. McILHANY, Judge, 31st Judicial District of Wheeler County, Texas, Respondent.

No. 07–87–0256–CV.

Court of Appeals of Texas, Amarillo.

May 31, 1988.

Rehearing Denied July 1, 1988.

Robert L. Templeton, John Smithee and Joe L. Lovell, Templeton & Garner, Amarillo, for relators.

H. Carter Burdette, Cantex, Hanger, Gooch, Munn and Collins, Fort Worth, for Arkla Exploration Co.

S. Tom Morris, Gibson, Ochsner & Adkins, Amarillo, for Key.

Harlow Sprouse, Underwood, Wilson, Berry, Stein & Johnson, Amarillo, for Apache Corp.

Jess Hall, Jr., Liddell, Sapp & Zivley, Houston, for El Paso Exploration.

Layton Z. Woodul, Sr., Crenshaw, Dupree & Milam, Lubbock, for Babcock & Wilcox.

Charles R. Watson, Jr., Culton, Morgan, Britain & White, Amarillo, for Hydril.

Oscar Fields, Stokes & Fields, Amarillo, for Sooner Pipe & Supply Corp.

Jack O'Neill, Porter & Clements, Houston, for Tom L. Scott, Inc., et al.

Leo Moore, Daisy Moore and Bess Cole, Dalhart, pro se.

Charles L. Tighe, Cotton, Bledsoe, Tighe & Dawson, Midland, for U.S. Industries.

Before REYNOLDS, C.J., and DODSON and COUNTISS, JJ.

DODSON, Justice.

In this original mandamus proceeding, Axelson, Inc. ("Axelson") and U.S. Industries, Inc. ("USI"), hereinafter referred to as "relators," request this Court to direct the Honorable Grainger W. McIlhany, Judge of the 31st Judicial District of Wheeler County, to order discovery of certain matters in a cause of action pending in that court. In that regard, the relators have sought extensive discovery from Apache Corporation ("Apache") and El Paso Exploration Company, n/k/a Meridian Oil Production, Inc. ("El Paso"), some of which has been denied by the trial court. Specifically, relators have requested (1) photographs of the well-site taken by Apache's experts and attorneys ("the photographs"); (2) depositions of experts originally designated testifying experts by parties who later settled with Apache, now designated consulting experts ("the Arkla/Key experts"); (3) gas analyses performed at the request of one of Apache's experts ("the Thurmond–McGlothlin gas analyses"); (4) depositions from several of Apache's consulting experts ("the dual capacity witnesses"); and (5) documents reflecting Apache's internal investigation of kickback schemes ("Apache's kickback investigation"). Relators bring this mandamus proceeding complaining of the denial of these requests and ask this Court to direct discovery on these matters. We conditionally grant the writ of mandamus on items one and three above and deny the petition for writ of mandamus on the remaining matters.

The underlying suit from which discovery is sought arose from the 4 October 1981 blowout of the Key 1–11 gas well in Wheeler County, Texas. Apache was the operator of the well and a fifty percent working interest owner at the time of the blowout. El Paso owned the remaining fifty percent working interest. As a result of the blowout, several mineral owners brought suit against Apache and El Paso. Apache and El Paso, real parties in interest, subsequently filed a third party action against Axelson and USI, relators, for damages in connection with the cost of controlling the well and for the loss of their own property interest.

In *Jampole v. Touchy*, 673 S.W.2d 569, 572–73 (Tex.1984), the Court determined that mandamus is a proper remedy to correct trial court action where there has been an abuse of discretion by not permitting discovery and there is no remedy by appeal "that is 'equally convenient, beneficial, and effective as mandamus.'" In that regard, the party resisting discovery has the burden of affirmatively pleading and establishing that discovery does not lie. *Peeples v. Hon. Fourth Supreme Judicial Dist.*, 701 S.W.2d 635, 637 (Tex.1985); *Giffin v. Smith*, 688 S.W.2d 112, 114 (Tex.1985). In this instance, we will examine each discovery request individually to determine if Apache and El Paso have met their burden.

### The Photographs

Relators sought discovery of several photographs of the Key 1–11 well-site and well equipment by filing, in the trial court, their First Request for Production addressed to Apache. Apache objected to this request on the basis that the photographs were taken by experts who had not been designated as testifying experts. The trial court denied relators' request for the photographs. Relators then filed two more requests for production, each requesting, *inter alia*, all photographs of the Key 1–11 well. Apache responded by asserting the work product and consulting expert privileges of Texas Rule of Civil Procedure 166b(3)(a) and (c) * and refused to produce the requested photographs. Relators then filed a Motion for Inspection and Copying of Photographs and Negatives, which was granted by the court with the exception of the photographs subject to Apache's work product and consulting expert exemptions under Rule 166b(3)(a) and (c). The trial court denied discovery of all photographs taken by Apache's attorneys and consulting experts. Relators now seek a writ of

---

* All references to rules herein will be references to the Texas Rules of Civil Procedure unless otherwise designated.

mandamus ordering the trial judge to allow discovery of these photographs.

At oral argument, counsel for Apache averred that its liability experts had been designated to testify and all photographs taken by those experts had been delivered to relators. Relators, in rebuttal, stated they had received the photographs taken by the experts, but claimed certain photographs taken by Apache's attorneys had not been produced. By their first mandamus point, relators continue to maintain that the photographs taken by Apache's attorneys have not been produced and are discoverable. We agree and conditionally grant the writ with regard to the photographs taken by Apache's attorneys.

Apache claims these photographs are its attorneys' work product and, therefore, exempt from discovery under Rule 166b(3)(a). The purpose of the work product exemption is to shelter the mental processes of the attorney, providing a privileged area within which the lawyer can analyze and prepare his or her case. *United States v. Nobles,* 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed. 141 (1975) (applying the work product exemption to criminal trials). However, the leading case of *Hickman v. Taylor,* 329 U.S. 495, 511, 67 S.Ct. 385, 393–94, 91 L.Ed. 451 (1947), states that the broad policy against invasion of the attorney's files does not make them absolutely immune from discovery.

In Texas, the work product exemption protects against disclosure of specific documents, reports, communications, memoranda, mental impressions, conclusions, opinions, or legal theories prepared and assembled in actual anticipation of litigation or for trial. It is not an umbrella for materials gathered in the ordinary course of the lawyer's business. *Evans v. State Farm Mut. Auto Ins. Co.,* 685 S.W.2d 765, 767 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

The photographs sought by relators cannot be characterized as materials assembled in the ordinary course of business. However, Apache has presented no evidence that these photographs reflect the mental impressions, opinions, or legal theories of an attorney. The record merely contains the oral arguments of the attorneys in the trial court. No testimonial or affidavit evidence can be found in the record with regard to the photographs. Although an *in camera* inspection was requested, the trial court refused to grant the inspection, and neither party complains on appeal of that refusal. By presenting no evidence of the exemption, Apache has failed to meet its burden of proving the work product exemption. The photographs do not fall within the protected categories described in *Evans;* therefore, they are discoverable.

### The Arkla/Key Experts

In their second mandamus point, relators complain that the trial court abused its discretion by not allowing them the opportunity to obtain discovery from T.B. O'Brien, Clarke B. Gillespie, Cranston Flesher, and Roy C. Williamson. These individuals are experts who were originally designated as testifying experts by the Arkla Corporation and the Key group ("Arkla" and "Key"). Arkla and Key were plaintiffs in the underlying suit who later settled with Apache and El Paso.

Before the settlement agreement was reached, Apache noticed the depositions of these four witnesses. On the morning the depositions were scheduled, Apache and El Paso entered into settlement agreements with Arkla and Key. The agreements contained the following paragraph assigning to Apache and El Paso Arkla's and Key's witnesses and work product:

4. *Assignment of Litigation or Investigation Information.* For good and valuable consideration, Claimant hereby assigns to Apache and El Paso all rights now existing or to exist in the future which it or its attorneys have to: work product of its attorneys; investigations; analyses; studies; the information, reports or opinions generated by any expert or expert witness, whether hired for consultation or for purposes of testifying at trial; communications with any expert or expert witness and the right to communicate with any expert or expert wit-

ness; employment of any expert or expert witness; and any rights similar to the foregoing concerning its prosecution of the above styled case or the facts giving rise to that case. Claimant agrees to allow the attorneys for Apache and the attorneys for El Paso reasonable access to inspect and copy any documents, now existing or to exist in the future, which in any manner relate to the foregoing, though nothing herein shall require Claimant to actively assist in the trial preparation of Apache and/or El Paso other than furnishing information like that referred to in this Paragraph....

After the witnesses were assigned to it by this agreement, Apache positively averred that the Arkla/Key experts would be consulting-only experts and stated that their depositions would not be given. Arkla and Key also positively averred that these witnesses were consulting-only experts.

■ Under the Texas Rules of Civil Procedure, when an expert is designated as a testifying expert, one may discover that expert's mental impressions and opinions. However, if the expert is designated as a consultant, the mental impressions and opinions of the expert are not discoverable. Tex.R.Civ.P. 166b(2)(e).

In opposition to Apache's refusal to allow the depositions to be given, relators, on 26 July 1984, noticed the deposition of Cranston Flesher. On 1 August 1984, the trial court, on a motion of Apache, quashed Flesher's deposition. On 7 August 1984, relators noticed T.B. O'Brien's and Clarke B. Gillespie's depositions. On 12 October 1984, these depositions were quashed. Relators again noticed the deposition of Flesher and noticed, for the first time, Roy C. Williamson's deposition on 4 December 1984. These depositions were quashed on the same day they were noticed. Relators issued two more sets of notices for these witnesses whose depositions had already been quashed. Both sets of notices were again quashed by the trial court. Relators now ask this Court to enter an order allowing the depositions to be taken.

Relators bring two arguments to this Court asserting their right to depose these witnesses. Their first argument is that these experts were not originally employed by Apache so Apache could not change their designations. Their second argument is that the settlement agreement between Apache and El Paso and Arkla and Key contravenes public policy.

■ Relators first assert that Apache did not have the power to change the designations of these experts. However, "[t]he decision of when to require a party to aver that the expert will not be a witness is properly left to the discretion of the trial judge...." *Werner v. Miller*, 579 S.W.2d 455, 456 (Tex.1979). Further, in *Jones & Laughlin Steel, Inc. v. Schattman*, 667 S.W.2d 352, 356 (Tex.App.—Fort Worth 1984, original proceeding), the court held that the trial court abused its discretion by ordering discovery of an expert's mental impressions and opinions after the expert had been designated a consulting expert.

In *Jones & Laughlin Steel, Inc. v. Schattman*, a deposition was being given by an expert who had not yet been designated a testifying or consulting expert. The expert declined to answer several questions with respect to his mental impressions and opinions. A motion to compel these answers was filed and granted. The relator in that case then filed a motion to reconsider and, during the hearing on that motion, the relator positively averred that the expert would be used solely for consultation. The trial court ordered the questions to be answered. The Fort Worth Court of Appeals determined that the trial court abused its discretion by ordering discovery of the expert's mental impressions and conclusions in that the trial court is given wide discretion in determining at what stage in the case experts must be designated. *Id.* at 356.

It is clear from the numerous orders issued by Judge McIlhany in the case before us that he permitted Apache and El Paso to change the designation of these witnesses on the morning their depositions were scheduled. This action was clearly within Judge McIlhany's discretion. It is

also clear from the settlement agreement that these witnesses had been assigned to Apache; therefore, it was within Apache's domain to aver that they would be used solely for consultation.

■ Having determined it was proper for Apache to change the designation of these witnesses, the central issue is whether Apache has met its burden of proving the elements of the consulting expert privilege. Rule 166b(3)(c) provides that an expert's identity, mental impressions, and opinions will be protected if the following three elements are established: (1) the expert will be used solely for consultation and will not testify at trial; (2) the expert's work product will not form the basis, either in whole or in part, of the opinions of an expert who will be called as a witness; and (3) the expert has been retained in anticipation of litigation or preparation for trial. The supreme court in *Turbodyne Corp. v. Heard*, 720 S.W.2d 802, 804 (Tex.1986), made clear that proof of each one of these elements is necessary to successfully resist discovery.

In this case, Apache filed a motion for a protective order seeking to protect several experts' (including the Arkla/Key experts) mental impressions and opinions from discovery. Attached to that document is an affidavit of Harlow Sprouse, attorney for Apache. In that affidavit, Sprouse avers that all experts which were assigned to Apache through the settlement agreements were hired in anticipation of litigation. He also states that they will not testify at trial and that their work product will not form the basis of any testifying experts' opinions. Also attached to the motion for protective order are the affidavits of Tom Morris and Carter Burdette, attorneys for Arkla and Key. In their affidavits, Morris and Burdette state that O'Brien, Gillespie, Flesher, and Williamson were employed in anticipation of litigation and will not testify at trial. In addition, they state that factual data and opinions developed by these experts will not be divulged to other experts and their work product will not be the basis of the testimony of experts who will be called as witnesses at trial. Relators have

produced no evidence to controvert these affidavits.

Since our review is limited to an abuse of discretion standard, *Jampole v. Touchy*, 673 S.W.2d at 572, without controverting evidence, we do not find that the trial court erred in finding sufficient proof of the consulting expert privilege.

Secondly, relators contend that by settling with Arkla and Key, Apache has violated public policy and bought these experts. In support of their position, the relators primarily rely on *International Proteins Corporation, et al. v. Ralston–Purina Company, et al.*, 744 S.W.2d 932 (1988) and *Williamson v. Superior Court of Los Angeles*, 21 Cal.3d 829, 148 Cal. Rptr. 39, 582 P.2d 126 (1978). We do not consider either case controlling in this instance.

In *International Proteins*, the Court simply determined that it was contrary to public policy to permit a joint tortfeasor the right to purchase a cause of action from a plaintiff to whose injury the tortfeasor contributed and by that purchase, obtain a right to reimbursement or contribution from a non-settling joint tortfeasor when no such right exists at common law or under the Texas comparative negligence statutes. The facts in *International Proteins* are so dissimilar from the circumstances before us, we deem further discussion of the case unnecessary.

In *Williamson*, one defendant agreed to indemnify a co-defendant against all claims by the plaintiff in return for the co-defendant's agreement to withdraw the co-defendant's expert witness who was prepared to give damaging testimony against the defendant. The court concluded that the situation was a bargain for the concealment and suppression of evidence and ordered the expert's report disclosed.

The circumstances in *Williamson* are distinctly dissimilar from the facts before us. In this instance, in determining whether agreements are, in effect, bargains for the concealment and suppression of evidence, we must look to the documents themselves. In that regard, we find nothing in the assignment of litigation informa-

tion clauses in question that establishes that the settlement agreements were conduits for the concealment or suppression of evidence in contravention of the State's public policy.

In Texas, a party is under no duty to produce evidence by an expert witness which may be adverse to his position. Otherwise, a party could never redesignate an expert witness who was or became adverse to the party's position. Acting in the best interest of his client, the attorney must be free to make whatever use of an expert's opinion that will be most likely to produce good results for his client. Thus, the attorney may properly decide not to call as a witness even an expert who is favorable to his client if, in the attorney's judgment, the client's interest will otherwise be better served. We conclude that the settlement agreements did not contravene public policy, that the trial court did not abuse its discretion by denying further discovery from those named individuals; and, in that regard, the relators' petition is denied.

### The Thurmond–McGlothlin Gas Analyses

Relators assert in their third mandamus point that they are entitled to certain gas analyses performed by Jack Chisum, an employee of Thurmond–McGlothlin. The tests were performed at the request of Robert Grace, an expert hired by Apache's attorneys. Relators sought to depose Chisum and, in conjunction with the notice of his deposition, subpoenaed these tests. Apache resisted discovery by asserting the work product exemption and the consulting expert privilege under Rule 166b(3)(a) and (c). The trial court found that the gas tests were acquired by Grace as a litigation consultant and were privileged under Rule 166b(3)(a), (c), or (d).

Apache states in its brief to this Court that Grace has now been designated a testifying expert. Therefore, all work done by or at the direction of Grace in anticipation of this litigation is discoverable. Tex.R. Civ.P. 166b(2)(e). The affidavits of Steve Grimmer, attorney for Apache, Paul Storts, expert for Apache, and Grace unequivocal-

ly aver that these tests were done at the direction of Grace and in anticipation of litigation. Therefore, the gas analyses are discoverable and we conditionally grant the writ with regard to the analyses performed at the direction of Grace.

### The Dual Capacity Witnesses

By their fourth mandamus point, relators complain of the trial court's denial of discovery of certain witnesses which fall into two separate categories. The first category consists of Paul Storts and Robert Grace, who are both employees of Apache, and experts hired by Apache's consultants. The second category is comprised of Richard Biel, Samuel Bryan, Joe Fowler, and Tom Hill, who relators claim possess relevant factual knowledge and opinions regarding the well blowout. Apache stated in their brief that Robert Grace and Samuel Bryan would testify at trial, so the point with regard to those two witnesses is moot. Their depositions will be given and their mental impressions and opinions are discoverable.

The record reveals that relators filed at least five notices to take the depositions of these witnesses, four of which were quashed. On the fifth set of notices, the trial court entered an order limiting discovery to each witness's observations with respect to the equipment supplied by Axelson to the Apache Key 1–11 well. He also limited discovery to the time period commencing with the blowout of the well until the equipment was delivered to Axelson. Relators now request discovery of these experts' mental impressions and opinions.

Addressing the first category of experts, which is now limited to Storts, there is no distinction in the Texas Rules of Civil Procedure between an expert who is a regular employee and one who is temporarily employed to consult in the preparation of a claim or defense. *Barker v. Dunham*, 551 S.W.2d 41, 43 (Tex.1977). Therefore, the determination of whether discovery will be allowed of Storts will hinge on whether he is a consulting-only expert or a testifying expert.

Addressing the second category of witnesses, now limited to Biel, Fowler, and Hill, we must determine whether their dual roles of fact and expert witnesses will affect discovery of their mental impressions and opinions. We have not been cited to, nor can we find, any Texas case law on this point. However, former Justice Barrow noted that, although federal courts have consistently held that such experts do not fall within the scope of the rules regarding experts, this view should not be extended to consulting experts who will not testify or contribute to the testimony of a testifying expert and whose only source of factual information was the consultation. Barrow and Henderson, *1984 Amendments to the Texas Rules of Civil Procedure Affecting Discovery*, 15 St. Mary's L.J. 713, 729 (1984). Therefore, following this rationale, the determination of whether the second category of experts may give their depositions also hinges on whether they are consulting or testifying experts.

■ An expert's mental impressions and opinions can only be protected if the party seeking to protect those impressions and opinions proves the three elements enumerated in Rule 166b(3)(c). *Turbodyne Corp. v. Heard*, 720 S.W.2d at 804. In this case, Apache filed a motion for a protective order seeking to protect Storts', Biel's, Bryan's, Fowler's, and Hill's mental impressions and opinions from discovery. The affidavit of Harlow Sprouse, attorney for Apache, states that these witnesses (Storts, Biel, Bryan, Fowler, and Hill) were hired in anticipation of litigation. It also states that these experts will not be called to testify at trial and their work product will not be the basis of any testifying expert's testimony. This uncontroverted affidavit is sufficient proof to uphold the trial court's decision that these witnesses not be deposed. We conclude that the trial court did not abuse its discretion, and we deny the petition as to these witnesses.

### Apache's Kickback Investigation

By their fifth mandamus point, relators claim they have been denied information relating to Apache's internal investigation involving kickbacks given to Apache's employees. Relators filed numerous requests for production, interrogatories, and notices of oral depositions attempting to discover documents made pursuant to this investigation. The trial court has denied each of these attempts.

■ Apache has resisted discovery of these documents through four methods: (1) work product exemption, (2) party communications exemption, (3) attorney-client privilege, and (4) relevance. We will first address the claims of work product and party communications exemptions. Both exemptions require that the information sought to be discovered must have been assembled in anticipation of litigation. Tex.R.Civ.P. 166b(3)(a) and (d). Only documents prepared in connection with the prosecution or defense of the lawsuit in which discovery is sought will be protected. *Turbodyne Corp. v. Heard*, 720 S.W.2d at 804. Albert B. Perlin, general counsel for Apache, testified that there was no direct connection between the kickback investigation and the Key wells and that the investigation was separate from the Key lawsuit. Therefore, the work product and party communications exemptions do not apply to the kickback investigations.

■ Apache has also claimed the attorney-client privilege with regard to this investigation. Rule 503(b) of the Texas Rules of Civil Evidence states the general rule of the attorney-client privilege as follows:

A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself or his representative and his lawyer or his lawyer's representative....

Confidential communication is defined as follows:

A communication is "confidential" if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or

those reasonably necessary for the transmission of the communication.

Tex.R.Civ.Evid. 503(a)(5).

The issue here is whether this investigation was intended to be kept confidential and whether it has been disclosed to third parties. The record reveals that this investigation information was the subject of a trial brought by Apache in federal court against White Stripe Pipeline Company. There is also testimony that the investigation was revealed to federal law enforcement agencies and a national daily publication. In view of this evidence, we find that the attorney-client privilege has been waived by disclosure. *See Gulf Oil Corp. v. Fuller*, 695 S.W.2d 769, 773 (Tex.App.— El Paso 1985, original proceeding).

■ The fourth attempt to resist discovery made by Apache was to assert irrelevance of the investigation information. In determining whether this information is relevant to the Key well blowout, we must look at the evidence that was before the trial court. Apache bears the burden of pleading and proving their contention. *Independent Insulating Glass v. Street*, 722 S.W.2d 798, 802 (Tex.App.—Fort Worth 1987, writ dism'd).

Before examining the evidence before us, we must look to the standard by which we are to measure the evidence. The supreme court explained the standard in *Jampole v. Touchy* as follows:

> [D]iscovery is not limited to information that will be admissible at trial. To increase the likelihood that all relevant evidence will be disclosed and brought before the trier of fact, the law circumscribes a significantly larger class of discoverable evidence to include anything reasonably calculated to lead to the discovery of material evidence. [Citations omitted] This broad grant is limited, however, by the legitimate interests of the opposing party, for example, to avoid overly-broad requests, harassment, or

disclosure of privileged information. [Citation omitted]

673 S.W.2d at 573.

Apache has produced evidence to show that the kickback investigation was completely unrelated to the Key well litigation. Mr. Perlin testified that the Key 1–11 well was not one of the wells under investigation. No testimony was offered to refute this evidence. It cannot be said that the information relators seek could reasonably lead to the discovery of admissible evidence. In this instance, we are persuaded that the request falls in the latter category of *Jampole*, that is, an overly broad request which serves as a method to harass the opposing party. The petition is denied as to the kickback investigation materials.

In conclusion, we deny the petition for writ of mandamus with regard to the Arkla/Key witnesses, the dual capacity witnesses, and the kickback investigation. With regard to the photographs and gas analyses, we anticipate that Judge McIlhany will vacate his orders denying discovery of these matters. Should he fail to do so, the writ of mandamus will be issued.

## ON MOTION FOR REHEARING *

Axelson, Inc. ("Axelson") and U.S. Industries, Inc. ("USI") relators, filed a motion for rehearing in this case and asserted that (1) this Court erred in finding that the kickback investigations were unrelated to the Key 1–11 well; and (2) this Court failed to address the specific discovery sought by relators with regard to the dual capacity witnesses.

Addressing relators' first point on rehearing, we acknowledge that the Key 1–11 well was one of the wells under investigation. After extensive cross-examination by Axelson's counsel, Albert Perlin, general counsel for Apache Corporation, testified that "[t]he Key well was not excluded from the scope of the investigation; nor was it a direct focusing on the Key well...." Perlin went on to state that the investigation was not related to the Key well litigation.

---

* This case was initially submitted to and determined by a panel of this Court, which consisted of Chief Justice Reynolds and Justices Dodson

and Countiss. Justice Countiss resigned from this Court on 7 June 1988 and did not participate in the decision on rehearing.

Therefore, the involvement of the Key wells in the kickback investigation does not change our disposition of relators' fifth mandamus point denying discovery of the kickback investigation materials. Relators' first point on rehearing is overruled.

We have considered the remaining points and contentions on rehearing and conclude they should be overruled and that we should adhere to our original opinion in this matter. Thus, the relators' motion for rehearing is overruled.