**Lee MONROE, et al., Relators,**

v.

**The Honorable Lawrence L. FULLER, Judge of the District Court of Ward County, Texas, 143rd Judicial District, Respondent.**

**No. 08–85–00181–CV.**

Court of Appeals of Texas, El Paso.

Dec. 11, 1985.

Irby L. Dyer, Mark Withrow, Turpin, Smith, Dyer & Saxe, Midland, for relators.

Lawrence L. Fuller, Ward County, Monahans, for respondent.

Before WARD, OSBORN and SCHULTE, JJ.

OPINION

WARD, Justice.

Lee Monroe and Lydia A.G. Stratton, et al., bring this original mandamus proceeding against The Honorable Lawrence L. Fuller, Judge of the 143rd Judicial District of Ward County, asking this Court to order the trial court to compel discovery of certain requested documents in possession of Gulf Oil Corporation. The trial court, after hearing evidence on a motion filed by the Relators in the case pending below, conducted an in camera examination of the requested documents and exempted them from discovery under Rule 166b(3)(a), (d) or (e), Tex.R.Civ.P. We hold that the trial court did not abuse its discretion and refuse to grant the writ of mandamus.

The plaintiffs in the suit below were Lee Monroe, Lydia A.G. Stratton, et al. They were the lessors and royalty interest owners in certain oil and gas leases covering lands in Ward and Reeves County. The various defendants below, including Gulf Oil Corporation, were working interest owners-lessees of the field into which the plaintiffs' acreage had been pooled. Gulf experienced financial difficulties with the leases in question beginning in the mid-1970s when natural gas prices began to rise, and Gulf found itself being contractually bound to an earlier lower sales price contract with TUFCO, its gas purchaser. The other working interest owners in the field were able to take advantage of the newer rising prices in their dealings with their own gas purchasers. Although the Monroe-Strattons owned fair market value leases as opposed to proceeds leases, all of the working interest owners in the field in question were operating under weighted average division orders under which the royalty owners in the unit, including the Monroe-Strattons, were being paid.

In 1979, claim was made by the Relators against Gulf for additional royalties based on the market value of gas rather than proceeds from Gulf's gas sales. In June, 1982, the Monroe-Strattons filed their present suit against Gulf, alleging that they had cancelled the weighted average division orders or alternatively that the division orders were never effective and that royalty was owed to them by Gulf and the other working interest owners at the market value of the gas rather than on any weighted average price basis.

The Relators in the course of their discovery moved the Respondent for an order to compel Gulf to produce certain documents which Gulf had previously refused. After an evidentiary hearing, together with an in camera examination of the requested documents, the court entered an order on June 20, 1985, to the effect that (1) certain technical committee documents G 1 through G 7 and G 17 through G 22 were not exempt from discovery; (2) that certain inadvertently disclosed Gulf documents had lost any privilege and status by voluntary waiver and were subject to discovery; and (3) that certain other Gulf documents, as numbered in the order, were exempt from discovery under Rule 166b(3)(a), (d) or (e), Tex.R.Civ.P.

Gulf previously complained to this Court as to the discovery order regarding the documents listed in items one and two. We refused that request for mandamus. *Gulf Oil Corporation v. The Honorable Lawrence L. Fuller*, 695 S.W.2d 769 (Tex.App. —El Paso 1985). See: *Gulf Oil Corporation v. The Honorable Lawrence L. Fuller*, 29 Tex.Sup.Ct.J. 18 (October 26, 1985) and 29 Tex.Sup.Ct.J. 64 (November 23, 1985). Now Monroe-Stratton, et al., in turn complain to us of the action of the trial court regarding the documents designated as item three above.

The Gulf documents in question which were held exempt from discovery consist in the main of accounting-type records. At the discovery hearing, all documents were introduced through the testimony of Bill Tampke, Gulf's accountant supervisor, and Morgan L. Copeland, formerly Gulf's regional attorney. According to their testimony, early in 1976 Gulf believed that the Monroe-Strattons and others would revoke their division orders and make a claim for additional royalty based on market value. The request for the studies and the matters contained in all of the documents was then made by Gulf attorneys under their assumption that the existing royalty liability or the potential liability together with other expenses had made the recovery of gas reserves in the field in question uneconomical. The accounting studies thus had a two-fold purpose: (1) to evaluate Gulf's potential liability to the Monroe-Strattons if they made a claim for additional royalty under the terms of their leases, and (2) to determine whether the royalty being paid, or which might have to be paid in the event of royalty owner claims or litigation, put Gulf in a position to terminate its unfavorable contract with its gas purchaser because it could no longer economically recover the gas reserves in the field.

The accounting studies were thus performed in anticipation of litigation with

Monroe-Strattons and Gulf's gas purchasers. Gulf anticipated correctly on both counts. TUFCO filed a law suit against Gulf in early February, 1977, six months after Mr. Tampke's studies were begun. Based on the information developed by Gulf and its accounting studies, Gulf took the position with TUFCO that its gas sales contract had terminated and requested TUFCO to accede to that interpretation. Eventually the TUFCO litigation was terminated after Gulf determined that it did not possess sufficient evidence to support its contention that the gas could not be recovered economically.

It is also noted that at the time the accounting documents were prepared and when Gulf believed that litigation against it was imminent from the Relators, that one royalty owner in the unit had already filed suit against some of the working interest owners in the unit challenging the validity of the weighted average division orders.

We believe that Rule 166b, subdivision 3d, controls this case. That subdivision exempts from discovery the following matters:

> [W]ith the exception of discoverable communications prepared by or for experts, any communication passing between agents or representatives or the employees of any party to the action or communications between any party and his agents, representatives or their employees, where made subsequent to the occurrence or transaction upon which the suit is based, and made in connection with the prosecution, investigation or defense of the claim or the investigation of the occurrence or transaction out of which the claim has arisen....

Under this subdivision, the privilege may be invoked only where the communications sought to be protected were prepared in connection with the prosecution or defense of the law suit in which the discovery is sought. *Allen v. Humphreys,* 559 S.W.2d 798 (Tex.1977). As we view the testimony, the purpose of all of the studies and documents was to evaluate Gulf's legal and financial position in two different anticipated law suits, one with the royalty owners including the present Relators and the other with gas purchasers. The testimony established that these problems connected with the two suits were so interwoven that they could not be separated for purposes of these studies. The record therefore supports the implied finding of the trial court that all of the communications were "made in connection with the prosecution, investigation or defense of the claim or the investigation of the occurrence or transaction out of which the claim has arisen." The fact that the studies were undertaken several years before the present claim and subsequent suit were made goes to the weight of the evidence only establishing the exception. The testimony as to the purpose of the documents was accepted by the trial court and that testimony is undisputed. Since Gulf specifically anticipated that the Monroe-Strattons might claim additional royalties based on market value and the studies were made in anticipation of that specific claim and were made subsequent to the occurrence out of which the claim being presently litigated had arisen, they are privileged.

Relators' petition for writ of mandamus is denied.