**NATIONAL STANDARD INSURANCE COMPANY, Appellant,**

v.

**Chris GAYTON, Appellee.**

No. 07–88–0138–CV.

Court of Appeals of Texas, Amarillo.

June 22, 1989.

Rehearing Denied July 18, 1989.

Carr, Evans, Fouts & Hunt, Donald M. Hunt, Lubbock, for appellant.

Dannie Boswell Botros, Lubbock, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

REYNOLDS, Chief Justice.

National Standard Insurance Company appeals from a judgment awarding Chris Gayton workers' compensation benefits for total and permanent disability. The appeal presents this question: Were medical records, containing the treating doctors' records describing Gayton's medical condition, diagnoses, and proposed treatment, admissible over National Standard's objection that in answering interrogatories, Gayton had not listed the doctors as expert witnesses whom he may call upon trial of the cause? Answering the question affirmatively, we will overrule National Standard's sole point of error and affirm the judgment.

After Gayton stated his cause for workers' compensation benefits, National Standard initiated discovery proceedings. Interrogatory number 5 proposed to Gayton was in this language:

Do you know of any person who is skilled in any particular field or science whom you may call as an expert witness upon the trial of this action and who has

expressed an opinion or will express an opinion upon any issue of this action? If so, Gayton was to state the identity and location of each person; the field or science in which the person was able to express an opinion; the subject matter on which the person is expected to testify; the detailed opinions held by each expert; and any written reports prepared by each expert in anticipation of trial and deposition testimony in this action.

To the interrogatory, Gayton answered, "Not known at present." However, in answering the third interrogatory inquiring of the doctors, chiropractors, or other practitioners of the healing arts he had seen, Gayton named Dr. A.R. Fernandez, and later supplemented his answer to add the names of Dr. Wainscott and Dr. Corbin. Gayton did not further supplement his answers to these two interrogatories.

Two weeks before the trial date, Gayton filed Drs. Wainscott's and Corbin's records describing his medical condition on September 25, 1984, the day after his injury, and Dr. Fernandez's October 17, 1984 "office notes" containing the doctor's diagnosis of Gayton's injury and his proposed treatment. The doctors' records were properly authenticated by affidavit. *See* Tex.R.Civ. Evid. 902(10).

When Gayton offered the medical records during trial, National Standard objected. In connection with its objection, National Standard conceded that the records had been filed, that they are unobjectionable as "factual observations," and that controverting affidavits were not filed because "portions of medical records are admissible, just as an exception to the hearsay [rule], just like business records." *See* Tex.R.Civ.Evid. 803(6). Nevertheless, National Standard insisted that the records are objectionable to the extent of the "diagnoses or professional opinions, expert opinions," because Gayton "failed wholly to designate an expert within thirty days of trial."

The trial court admitted the medical records without inquiring into or finding "good cause" why Gayton did not designate the treating doctors as expert witness-

es in response to the fifth interrogatory. National Standard contends, with a single point of error, that the admission of the medical records under these conditions automatically requires reversal of the judgment. We do not agree.

Neither National Standard nor Gayton has cited any authority deciding the novel question. In National Standard's view, however, a negative answer to the question is compelled by the force of the discovery rules, particularly by Rules 166b and 215, Texas Rules of Civil Procedure. First, National Standard points out that the purpose of discovery is to "allow[ ] the parties to obtain the fullest knowledge of issues and facts prior to trial," *West v. Solito*, 563 S.W.2d 240, 243 (Tex.1978), thereby eliminating gamesmanship, preventing trial by ambush, and ensuring fairness in the search for justice. *See Garcia v. Peeples*, 734 S.W.2d 343, 347 (Tex.1987). Then, National Standard refers to Rules 166b, subd. 2 e(1), which provides, in pertinent part, that:

A party may obtain discovery of the identity and location ... of an expert who may be called as a witness ...,

and to Rules 166b, subd. 6 b, which provides, *inter alia*, that:

If the party expects to call an expert witness when the identity ... has not been previously disclosed in response to an appropriate inquiry directly addressed to [this matter], such response must be supplemented to include the name, address and telephone number of the expert witness ... as soon as is practical, but in no event less than thirty (30) days prior to the beginning of trial except on leave of court.

Next, National Standard refers to Rule 215, subd. 5, which provides, in material part, that:

A party who fails to respond to or supplement his response to a request for discovery shall not be entitled to present evidence which the party was under a duty to provide in a response or supplemental response or to offer the testimony of an expert witness ... unless the trial court finds that good cause suffi-

cient to require admission exists. The burden of establishing good cause is upon the party offering the evidence and good cause must be shown in the record. Finally, National Standard concludes that the demonstrated failure to comply with the rules by omitting the names of the doctors as expert witnesses and to establish good cause for the failure results, by the authority of *E.F. Hutton & Co., Inc. v. Youngblood,* 741 S.W.2d 363, 364 (Tex. 1987), in absolute exclusion of the expert medical testimony contained in the medical records. Thus, National Standard adds, the admission of the medical records was reversible error, because the medical opinions expressed therein gave weight to Gayton's claim and rebutted its own evidence, thereby being reasonably calculated to cause and probably did cause the rendition of an improper judgment. *See Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989).

The immediate difficulty with National Standard's view is that it envisions the compelled disclosure of nontestifying doctors whose recordings are included in medical records under the rules providing for full disclosure of testifying experts. Although Rule 166b was promulgated to combine all scope of discovery concepts in one rule, *Terry v. Lawrence,* 700 S.W.2d 912, 913 (Tex.1985), the concept of discovering testifying experts is different from the concept of discovering medical records. The function of the expert witness is to voice opinion testimony; the function of medical records, like other documents, is to reveal admissible evidence, or to reasonably lead to the discovery of evidence, material to the cause of action. *Axelson, Inc. v. McIlhany,* 755 S.W.2d 170, 174, 178 (Tex.App.— Amarillo 1988, orig. proceeding). Both the expert witness and the medical records are discoverable under the separate concepts by appropriately phrased interrogatories.

Subdivision 2 e(1) of Rule 166b authorizes discovery of the identity, location, subject matter of testimony, opinions held by, and facts known to "an expert who may be called as a witness." These were the matters National Standard sought to discover by its fifth interrogatory. The three doctors whose diagnoses and opinions were contained in the medical records were not called to testify.

Subdivision 2 h of Rule 166b sanctions the discovery of medical records by a written request for production, or for furnishing an authorization permitting the full disclosure of, medical records, whether or not they may be used or offered in evidence upon trial. Although Gayton, in responding to the third interrogatory, advised National Standard that he had seen the three doctors whose diagnoses and opinions were included in the medical records, National Standard did not seek the medical records by appropriately phrased interrogatories in its discovery proceedings.

■ It follows that the concept of discovering an "expert who may be called to testify," does not implicate the disclosure of nontestifying medical experts whose opinions and diagnoses are included in medical records which may be used or offered in evidence upon trial. Nor does the nondisclosure in response to a request for identity of testifying experts prevent the admission into evidence of the nontestifying doctors' opinions or diagnoses included in medical records which, upon proper authentication, are rendered admissible under the rules of evidence. Tex.R.Civ.Evid. 803(6). Accordingly, National Standard's point of error is overruled.

The judgment is affirmed.